**UNITED STATES of America**

v.

**Germaine BATTIS, Appellant.**

No. 08–2949.

United States Court of Appeals, Third Circuit.

Argued Sept. 29, 2009.

Filed Dec. 14, 2009.

674

Robert Epstein, Esq. [Argued] Brett G. Sweitzer, Esq., Defender Association of Philadelphia Federal Court Division, West Philadelphia, PA, for Appellant.

Bernadette A. McKeon, Esq. [Argued] Mark S. Miller, Esq., Office of the United States Attorney Philadelphia, PA, for Appellee.

Before RENDELL and AMBRO, Circuit Judges, and McVERRY, District Judge.*

## OPINION OF THE COURT

RENDELL, Circuit Judge.

The Sixth Amendment to the Constitution states that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Germaine Battis urges that this right was violated when forty-five months elapsed between his indictment and trial. The District Court reasoned through the four-factor test established by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and concluded that there was no constitutional violation. On appeal, weighing these four factors anew, we reach a different conclusion and hold that Battis's right to a speedy trial was violated. We will therefore reverse the order of the District Court and remand the case with instructions to dismiss the indictment and vacate his conviction.[1]

This case arises out of an altercation between Battis and other patrons of the Trolley Stop Tavern, a Philadelphia bar, on March 22, 2003. By the end of the confrontation, which had moved from the bar to a nearby street, Battis was in possession of a handgun. According to Battis, the gun belonged to one of the individuals with whom he was fighting, and Battis took the gun from him in order to avoid being shot. Battis was subsequently pursued by police. According to the police, Battis had the gun all along and tried to shoot an officer at point-blank range. Battis testified that he did not remember attempting to shoot the officer.

Battis was arrested by the Philadelphia Police at the scene and was charged by the District Attorney with attempted homicide, aggravated assault, and several firearms violations. Battis's initial appearance was continued on three occasions, at his request, before he was arraigned in state court on January 20, 2004. The record indicates that Battis was represented by counsel in the state court case at the time of his arraignment.

On February 24, 2004, Battis was indicted in the Eastern District of Pennsylvania for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On the same day, the Government requested and received a bench warrant from the

---

* Honorable Terrence F. McVerry, Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

1. After the denial of his speedy trial motion, Battis proceeded to trial and was convicted on one count of possessing a firearm as a convicted felon, and one count of possessing ammunition as a convicted felon, both in violation of 18 U.S.C. § 922(g)(1).

District Court. The Government later explained that it had informed the District Court's clerk that Battis was in state custody, and that it is standard practice to use a bench warrant as a detainer when a defendant is in state custody. It appears that this information was never formally noted by the District Court, since on February 18, 2005, it noted in a "Report of Speedy Trial Act Delay" that proceedings had been delayed because Battis "is a fugitive." App. 9–10. Battis was not brought into the District Court for an arraignment or initial appearance until November 2006.

The record suggests that the state case was also dormant during this period. According to the state court docket, fourteen continuances were requested after the arraignment. At a scheduling conference with the state court judge on July 18, 2005, Battis's counsel, Allan Sagot, requested a continuance to allow the federal trial to proceed first. Sagot reported that he had spoken to AUSA Mark Miller, that Miller had said that the Government planned to pursue the federal case "immediately," and that Sagot expected the federal trial to begin within sixty days. Appellee's Supp. App. 6. The Assistant District Attorney did not dispute these statements, and the Court adjourned the case to October 27, 2005. *Id.* at 7. On October 27, Sagot advised the Court that "[t]he feds are still trying [Battis]," and requested another continuance. *Id.* at 15–16. During this time, Battis had no counsel in federal court, and no activity was occurring in Battis's federal case.

This record conflicts with the Government's version of events. At a 2007 hearing before the District Court, AUSA Miller explained that the District Attorney's office had requested that federal authorities delay their prosecution while the state court case proceeded. According to Miller, the DA's office had also repeatedly stated that "they were ready . . . to try the case." App. 44. Miller conceded, however, that, "in several telephone conversations," Sagot had advised him that he "would prefer the federal case to go forward first." App. 46–47. Thus, although Sagot had informed the state court in 2005 that Miller was proceeding in federal court, Miller believed that he was waiting for the state court case to proceed.

On September 18, 2006, the Court of Common Pleas dismissed the indictment under Pennsylvania's speedy trial rule.[2] After the dismissal of the state case, federal prosecutors finally began to proceed with their prosecution, over two and a half years after Battis was indicted. On October 17, 2006, they obtained a superseding indictment, which added a charge of possession of ammunition by a convicted felon, also in violation of 18 U.S.C. § 922(g)(1). On November 2, Battis was brought before a federal Magistrate Judge for his initial appearance. The Magistrate Judge appointed counsel, scheduled an arraignment for November 7, and ordered Battis to be held without bail. At the November 7 arraignment, Battis pleaded not guilty but did not contest being held without bail. Battis had not been brought before the District Court for an arraignment or initial appearance before November 2006, and had not been represented by counsel up to that point in the federal case. Although Sagot had been representing Battis in the state case, Battis had informed Sagot that he could not afford to retain Sagot to represent him in the federal case as well. On November 9 and November 17, respectively, Assistant Federal Defenders Benja-

---

2. This decision was later reversed by the Superior Court, and the case was remanded for trial.

min Cooper and Mark Wilson entered their appearances.

The District Court set a trial date of January 2, 2007. On December 4, 2006, defense counsel moved to dismiss the indictment for violation of Battis's constitutional right to a speedy trial. Shortly thereafter, Battis filed an unopposed motion to postpone the trial, which was granted. The District Court held a hearing on the motion to dismiss on January 9, 2007, at which Sagot and Miller described the history of their discussions (which is summarized above) regarding how the cases would proceed.

On February 15, the District Court denied the motion to dismiss the indictment. In a written Opinion and Order, the Court applied the factors set forth by the Supreme Court in *Barker*: the length of delay, reason for the delay, extent to which the defendant asserted his speedy trial right, and the prejudice suffered by the defendant. In doing so, the Court made the following determinations. First, a delay of "32 months is a serious and unusual delay," and thus "weighs in Battis's favor." App. 84. Second, the Government deferred to the state prosecution as "a matter of policy and discretion," and not "in malice, or in an attempt to hamper Battis's defense," or out of "bad faith." Thus, the delay was "justifiable and does not weigh significantly against the United States." App. 85. Third, although Battis "did make some effort through his state court attorney, Sagot, to put the AUSA on notice that he wanted the federal case [to] go forward," he "certainly did not make the utmost effort to get himself before this Court and move the federal case forward." App. 86. Specifically, he had not "contacted the Court by informal communication or formal motion" prior to the December 2006 motion to dismiss, and had not pursued the matter with the U.S. Attorney's Office "after the initial conversation." App. 86. Thus, "Battis's assertion of his right weighs only very slightly in his favor." App. 86. Fourth, Battis had not shown that he was prejudiced by the delay, particularly since, in preparing for his state case, "which involved the same incident as the federal charges," "Battis had [a] full opportunity to" investigate the relevant facts. App. 86–88. The Court therefore held that Battis's speedy trial right had not been violated.

The Court set a new trial date of July 3, 2007. In the interim, Battis, on his own, despite being represented by counsel at the time, sent a letter to the Court requesting a speedy trial, and filed a motion to dismiss the indictment for violations of the Speedy Trial Act. The motion was denied. On June 26, 2007, defense counsel moved for another continuance in order to allow time for certain forensic testing. The Court granted the continuance and set a new trial date of October 22.

Jury selection occurred on October 22, 2007, and opening statements began two weeks later, on November 5.

The jury found Battis guilty on both counts. On June 23, 2008, the District Court sentenced Battis to concurrent terms of 120 months' imprisonment on both counts, and five years' supervised release. This appeal followed.

The District Court had jurisdiction over this case under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

■ We review *de novo* a district court's legal conclusion regarding a defendant's claim that his constitutional right to a speedy trial was violated. *Burkett v. Fulcomer*, 951 F.2d 1431, 1437–38 (3d Cir. 1991). We review the factual findings underpinning that conclusion for clear error. *Id.*

In *Barker*, the Supreme Court established a balancing test for courts to use in evaluating whether the constitutional right to a speedy trial has been violated. As noted above, *Barker* identified four factors for courts to consider in weighing the prosecution's conduct against that of the defense: the length of delay, reason for the delay, extent to which the defendant asserted his speedy trial right, and the prejudice suffered by the defendant. 407 U.S. at 530, 92 S.Ct. 2182. None of these factors is "either a necessary or sufficient condition," and the factors "must be considered together with such other circumstances as may be relevant." *Id.* at 533, 92 S.Ct. 2182. If a defendant's right to a speedy trial has been violated, the indictment must be dismissed. *Id.* at 522, 92 S.Ct. 2182.[3]

The first consideration under the *Barker* test is the length of the delay. This, in turn, entails a two-part inquiry. "[T]he delay involved first figures into the speedy trial equation for the purpose of determining whether it is long enough to trigger inquiry into the other *Barker* factors." *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir.1993). If the delay is relatively brief, then it is not necessary to consider the other *Barker* factors. *Barker*, 407 U.S. at 530–31, 92 S.Ct. 2182. If the delay is sufficiently long, courts assess the extent to which the delay was long enough to "intensify" the prejudice caused by the delay. *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). We have previously held that a delay of even fourteen months is sufficient to trigger review of the remaining *Barker* factors. *See Hakeem*, 990 F.2d at 760. However, we have also noted that "[l]ong-

er delays can be tolerated, for example, when the crime is very serious or complex." *Wells v. Petsock*, 941 F.2d 253, 257 (3d Cir.1991); *see also Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

The parties disagree as to how the period of delay in this case should be measured. Battis argues that the delay ran from the date of his arrest by state authorities to the date the federal trial began. The Government argues that the delay ran from the date of Battis's federal indictment to the date of his initial appearance in federal court. Battis was arrested by state authorities on March 22, 2003, and was indicted in the Eastern District of Pennsylvania eleven months later, on February 24, 2004. Jury selection for his federal trial occurred on October 22, 2007. Thus, approximately fifty-six months elapsed between Battis's state arrest and federal trial, and approximately forty-five months elapsed between his federal indictment and trial.

In general, delay is measured from the date of arrest or indictment, whichever is earlier, until the start of trial. *Hakeem*, 990 F.2d at 760. We have not previously considered whether, as Battis contends, an arrest by state authorities is sufficient to trigger a defendant's right to a speedy trial on subsequent federal charges, and the parties do not cite any authority that squarely addresses this question. However, in *United States v. MacDonald*, the Supreme Court stated in a footnote, which was clearly dicta, that "an arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sover-

---

**3.** Battis does not claim that his statutory rights under the Speedy Trial Act were violated, presumably because the time period under that statute starts when the indictment is filed or the defendant appears before a court, "whichever date last occurs." 18 U.S.C. § 3161(c)(1).

eign." 456 U.S. 1, 10 n. 11, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). Similarly, the other courts of appeals to have considered this issue have held that an "arrest on state charges does not engage the speedy trial protection for a subsequent federal charge." *United States v. Garner,* 32 F.3d 1305, 1309 (8th Cir.1994); *see also, e.g., United States v. Muniz,* 1 F.3d 1018, 1024 (10th Cir.1993); *United States v. Marler,* 756 F.2d 206, 211 (1st Cir.1985). We will adopt this approach as well. When an arrest on state charges is followed by a federal indictment, the right to a speedy trial in the federal case is triggered by the federal indictment, and the time period under consideration commences on that date.[4]

The relevant period of delay is thus the forty-five months between the federal indictment on February 24, 2004, and the start of trial on October 22, 2007.[5] This is long enough to require consideration of the remaining *Barker* factors, especially in light of the relatively straightforward na-

ture of the charges, and to intensify any prejudice caused by the delay. We conclude that the first factor weighs heavily against the Government.

■■■■ The second *Barker* factor is the reason for the delay. *Barker* grouped possible reasons for delay into three categories. A deliberate effort by the Government to delay the trial "in order to hamper the defense" weighs heavily against the Government. *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. A "more neutral reason such as negligence or overcrowded courts" also weighs against the Government, though "less heavily." *Id.* This is because "ultimate responsibility for such circumstances must rest with the [G]overnment," since it is the Government's duty to bring a defendant to trial. *Id.* at 527, 531, 92 S.Ct. 2182. Finally, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* at 531, 92 S.Ct. 2182. By contrast, "delay caused by the

---

4. The Government contends that the delay ended when Battis made his initial appearance in federal court on November 2, 2006, but it cites no authority for this proposition. We decline to follow this approach. To the contrary, the practice of our court and the Supreme Court has generally been to measure delay until the start of trial. *See, e.g., Barker,* 407 U.S. at 533, 92 S.Ct. 2182; *United States v. Dent,* 149 F.3d 180, 184 (3d Cir.1998); *Hakeem,* 990 F.2d at 760.

We recognize that in *Doggett,* 505 U.S. at 652, 112 S.Ct. 2686, the Court focused on the period between indictment and arrest. However, in *Doggett,* the facts were unique: the Government had failed to conduct an adequate search for Doggett after his indictment, leading to a delay of over eight years before he was arrested and notified of the indictment. Since Doggett ultimately pled guilty, there was no trial date to which the Court could look. Moreover, in light of the lengthy delay before Doggett was even arrested, there was no need for the Court to look past the date of arrest in order to determine that the delay was excessive. This may explain why the Court relied on the date of arrest without

commenting on the fact that this approach deviated from its analysis in *Barker.*

5. We also hold that the speedy trial right was not affected by the filing of a superseding indictment in 2006. The Government does not argue otherwise (i.e., that the filing of the superseding indictment in 2006 restarted the constitutional speedy trial clock). Our holding is consistent with the approach that we took in *United States v. Dreyer,* 533 F.2d 112 (3d Cir.1976), in which we calculated the delay between the original indictment and trial, notwithstanding the intervening filings of two superseding indictments. It is also consistent with the approaches taken by the other courts of appeals. *See, e.g., United States v. Parker,* 505 F.3d 323 (5th Cir.2007); *United States v. Oriedo,* 498 F.3d 593 (7th Cir.2007); *United States v. King,* 483 F.3d 969 (9th Cir.2007); *United States v. Watford,* 468 F.3d 891 (6th Cir.2006); *United States v. Armedo–Sarmiento,* 545 F.2d 785 (2d Cir.1976); *United States v. DiMuro,* 540 F.2d 503 (1st Cir.1976).

defense weighs against the defendant," including "delay caused by the defendant's counsel." *Vermont v. Brillon,* —— U.S. ——, 129 S.Ct. 1283, 1290–91, 173 L.Ed.2d 231 (2009). The Government "bears the burden to justify the delay." *Hakeem,* 990 F.2d at 770.

In evaluating this factor, we subtract the amount of delay caused by the defendant from the delay caused by the Government. *See, e.g., United States v. Dent,* 149 F.3d 180, 184–85 (3d Cir.1998); *Hakeem,* 990 F.2d at 770. In this case, trial was initially set for January 2, 2007. As a result of continuances sought by Battis, the trial was continued from January 2 to July 3, and from July 3 to October 22. Excluding the period between January 2 and October 22, 2007, the length of delay attributable to the Government is approximately thirty-five months.

The Government concedes that it intentionally delayed bringing Battis to trial. However, the Government explains that it did this not to disadvantage him but, rather, so that the state prosecutors could try Battis first. Thus, the Government claims to have been acting "out of deference to the state's compelling interest in this case, which involved an allegation that the defendant attempted to shoot a police officer, and to promote harmonious relations with the local authorities." Appellee's Br. at 36. The Government also urges that federal prosecutors believed that the state was diligently pursuing its case.

We are not persuaded that the Government's justification for the delay is sufficient to balance the scales. As noted above, even a "neutral" reason weighs against the Government. Unlike a case where a witness is missing, the Government could have brought Battis to trial at any time. Prosecutors knew precisely where Battis was located, yet they failed to bring him before the District Court for an initial appearance. Once federal prosecutors bring an indictment against a defendant, they have a duty to notify the District Court that the defendant should be arraigned and appointed counsel, and to bring the defendant to trial expeditiously. *See, e.g., Barker,* 407 U.S. at 527, 92 S.Ct. 2182 ("[S]ociety has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest."). This duty persists even when state authorities have a strong interest in bringing their own case against the same defendant. The Government cannot indict a defendant and then delay a case indefinitely, without any notice to a federal judge, merely because it is aware of a state proceeding involving the same defendant. This is true regardless of how "compelling" the state's interest in that proceeding is. While the initial delay to allow the state to proceed may have been valid, there came a time when the federal Government should have taken some action to proceed in light of the state authorities' inaction.

The Government's explanation of the delay is also undermined by the fact that the state trial was apparently being delayed in order to facilitate the federal prosecution. This apparent misunderstanding persisted for as long as thirty-two months, while the Government did nothing to proceed with the case. This factor therefore weighs against the Government, though not as heavily as it would if the Government had been intentionally undermining the defense.

 The third factor under *Barker* is whether the defendant has asserted his right to a speedy trial. An assertion of this right provides evidence that the defendant was being deprived of his constitutional right since "[t]he more serious the deprivation, the more likely a defendant is to complain." *Barker,* 407 U.S. at 531, 92

S.Ct. 2182. Thus, a defendant's claim that the right is being violated provides strong evidence that it actually was violated. *Id.* at 531–32, 92 S.Ct. 2182. On the other hand, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* Moreover, when a defendant requests a speedy trial, but "through contrary actions ... evidences an unwillingness to commence with the trial requested, [the] request carries minimal weight." *Hakeem,* 990 F.2d at 765.

We have previously described two ways in which a defendant can show that he asserted his right to a speedy trial. When a defendant is represented by counsel, he should identify "a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success." *Hakeem,* 990 F.2d at 766. By contrast, "informal correspondence" to the court by a represented defendant is less convincing. *Id.* When a defendant is proceeding *pro se,* he "does not have to make a procedurally perfect assertion of his speedy trial rights, but must make a reasonable assertion of the right so as to put authorities on notice of his Sixth Amendment claim." *Douglas v. Cathel,* 456 F.3d 403, 418 (3d Cir.2006) (internal quotation marks and citation omitted). We emphasize, however, that even if a defendant fails to adequately assert his right to a speedy trial, that means only that the third *Barker* factor will be weighed against him. It does not mean that he cannot claim that his right to a speedy trial was violated.

On four different occasions, Battis notified authorities that he wanted his federal trial to proceed promptly. The first time, Sagot, his counsel for the state court proceeding, told AUSA Miller that he preferred that the federal trial occur first.[6] At the time, Battis had not yet appeared in federal court, and was unrepresented for purposes of the federal case. Even though Sagot had called AUSA Miller on behalf of Battis, Battis had specifically advised Sagot that he could not afford to retain him in the federal case. We therefore conclude that Battis was acting *pro se* in the federal case at that time. The Government concedes that AUSA Miller did receive Sagot's request, but claims that Miller expected the request to be formalized in some way. However, we have never *required* a defendant, much less a *pro se* defendant, to make a formal motion to a court, or a formal request to the Government, in order to demonstrate his desire to receive a speedy trial.

Battis then addressed three specific requests for a speedy trial to the Court. Within weeks of being appointed, his federal counsel moved to dismiss the indictment on speedy trial grounds. The promptness of this motion weighs strongly in Battis's favor. After that motion was denied, Battis sent a *pro se* letter to the District Court in March 2007 to request a speedy trial, and then, in May 2007, filed a *pro se* motion to dismiss the indictment on statutory speedy trial grounds. These requests indicate that Battis was concerned that his trial happen promptly, and provide some evidence that his right to a speedy trial was being violated.[7]

---

**6.** It is not clear how many conversations occurred between Sagot and AUSA Miller. Miller said that "several" conversations had occurred. App. 47. However, Sagot referred to only one conversation, and the District Court mentioned only one conversation in its opinion. We do not find clear error in the determination that only one conversation occurred, and it is immaterial to our analysis whether there was more than one such conversation. We will therefore assume that there was only one conversation.

**7.** Because Battis made the final two requests at a time when the trial had been continued at

Battis faults the District Court for requiring him to have made "the utmost effort to get himself before this Court and move the federal case forward." App. 86. However, we do not view the Court's use of the term "utmost effort" as its enunciation of the standard that Battis was required to meet. Surely there is no such standard for a defendant's "request" for a speedy trial. We also note that although a formal motion to a federal court provides strong evidence that a defendant believed his right to a speedy trial was being violated, a request made directly to federal prosecutors should also be taken into account.[8]

Taken together, the request that Battis's state court counsel made to federal prosecutors, the motion to dismiss on speedy trial grounds that Battis's federal counsel filed promptly upon being retained, and, to a lesser extent, the two subsequent requests for a speedy trial made by Battis on his own are sufficient to cause the third *Barker* factor to weigh in his favor.

 The final *Barker* factor is the prejudice to the defendant. The Supreme Court has outlined two ways in which a defendant can establish prejudice. In *Barker*, the Court directed the courts to assess the prejudice to a defendant "in light of the interests . . . which the speedy trial right was designed to protect." 407 U.S. at 532, 92 S.Ct. 2182. A defendant can establish specific prejudice by showing that he was subject to "oppressive pretrial incarceration," that he suffered "anxiety and concern" about the impending trial, or that his defense was impaired as a result of the delay. *Id.* However, in *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686, the Court held that "consideration of prejudice is not limited to the specifically demonstrable," and allowed defendants to claim prejudice without providing "affirmative proof of particularized prejudice." Given that "time's erosion of exculpatory evidence and testimony" can hinder a defendant's ability to prove that his defense was impaired by a delay, the Court stated that "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at 655–56, 112 S.Ct. 2686. This presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government "affirmatively prove[s] that the delay left [the defendant's] ability to defend himself unimpaired." *Id.* at 658 & n. 1, 112 S.Ct. 2686.

In evaluating whether the period of delay was long enough to trigger this "presumption of prejudice," the *Doggett* Court considered both the total length of delay (over eight years) and the portion of that delay attributable to the Government (six

his counsel's request, we must assume that Battis was not ready to proceed to trial at that time, and we are therefore compelled to give those requests less weight than his earlier requests. *See Hakeem*, 990 F.2d at 764 ("Repeated assertions of the right do not . . . balance this factor in favor of a [defendant] when other actions indicate that he is unwilling or unready to go to trial."). At the same time, however, we note that Battis was understandably not prepared for trial when he filed these requests in March and June 2007, just four and seven months, respectively, after federal counsel was appointed for him, three and a half years after the events took place. Therefore, under the circumstances of this case, these requests do provide some evidence that Battis was being denied a speedy trial.

**8.** We note that this is not a situation where the court was given no notice of the defendant's claimed constitutional violation, as would have been the case had Battis never asserted his right in the trial court and then proceeded to trial, only to claim on appeal that his right had been violated. That situation would raise the issue of waiver.

years). *Id.* at 657–58, 112 S.Ct. 2686. It held that this delay was long enough to presume that the reliability of Doggett's trial would be compromised, and that Doggett was prejudiced by the delay. *Id.* Although we have had few occasions to consider what period of time is sufficient to find presumptive prejudice, we have determined that a fourteen-month period between arrest and trial is insufficient. *Hakeem*, 990 F.2d at 764.

■ We now hold that prejudice will be presumed when there is a forty-five-month delay in bringing a defendant to trial, even when it could be argued that only thirty-five months of that delay is attributable to the Government. After such a long delay, witnesses become harder to locate and their memories inevitably fade. As *Doggett* recognized, the Government may attempt to rebut this presumption. However, here, as in *Doggett*, it has not affirmatively proved that the delay left Battis's ability to defend himself unimpaired.

Battis's preparation for the state case during the delay does not, as the Government urges, alleviate any prejudice simply because the charges in the state case were based on essentially the same facts as the federal charges. First, that does not address the reason for presuming prejudice—that the delay undermines the basic reliability of the trial. Second, despite the fact that the federal and state charges arose from the same incident, the concerns of Battis's counsel in the two cases, and their resulting investigative efforts, would necessarily have been different. Whereas his federal counsel would be focused on how Battis came to possess the weapon, that consideration would be of minimal significance to the broader state charges, which were more focused on how he used the weapon. We also note that the Government has not indicated what, if any, work was being done in connection with the state court case—aside from work being done by a private investigator, who, as explained above, would not have focused on the same issues as an investigator hired by federal counsel. The Government's position that the work being done removed any prejudice is entirely speculative. Lastly, the threat to the reliability of a trial is especially high where, as here, the delay results in the defendant's not being appointed counsel for three years after indictment.

We therefore conclude that Battis was presumptively prejudiced by the delay, and that the fourth *Barker* factor weighs against the Government. As a result, we need not reach Battis's other claims of prejudice.[9]

We believe that all four factors of the *Barker* test weigh against the Government, and that Battis was unconstitutional-

---

9. Battis claims that he was prejudiced because a witness to the altercation, Jo–An Vasquez, could not be located at the time of trial. Vasquez had told a private investigator, who was working for Battis in connection with the state court case, that Battis had taken the gun from the person with whom he was fighting when that person tried to shoot Battis. His testimony could, therefore, have corroborated Battis's defense. However, when he moved to dismiss the indictment, Battis did not inform the District Court that Vasquez could not be located. This was presumably because his counsel had not had an opportunity to determine this. Yet, even after learning about Vasquez's statement, Battis never renewed his motion to dismiss. Instead, he mentioned Vasquez's unavailability to the Court in passing, in connection with an evidentiary motion. Nor did Battis put before the District Court evidence that he had "seriously attempted to locate" Vasquez, as we required in *Dent*, 149 F.3d at 185. Thus, although it is troubling that the lengthy delay in this case caused a witness favorable to the defense to be unavailable for trial, it would be difficult to credit this claim on appeal.

ly deprived of his right to a speedy trial. We will therefore reverse the judgment of the District Court and remand to that Court with instructions to dismiss the indictment and vacate Battis's conviction.[10]

---

**10.** Since we will instruct the District Court to vacate the conviction, we need not address Battis's alternative argument that he is entitled to a new trial because the District Court erred by allowing the Government to impeach him using a prior conviction that was over ten years old.