OPINION OF THE COURT
JORDAN, Circuit Judge.
Steven Usuama Rose appeals the judgment of the United States District Court for the Eastern District of Pennsylvania imposing a sentence of 120 months imprisonment following his convictions for distribution of cocaine and possession of a firearm by a convicted felon. Rose had been indicted by state authorities who later dismissed the state charges against him in favor of federal prosecution. Rose contends that the delay between his state proceedings and his federal conviction violated his Sixth Amendment right to a speedy trial. He also attacks the procedural reasonableness of his sentence. For the reasons that follow, we will affirm Rose’s conviction and vacate and remand for resentencing.
I. Background
On August 9, 2005, Rose attempted to sell 0.3 grams of cocaine to an undercover police officer in Lancaster, Pennsylvania. Officers arrested him after a brief foot chase, during which Rose discarded a nine-millimeter firearm. Upon the arrest, police searched Rose and discovered an additional 0.6 grams of cocaine, for a total of 0.9 grams involved in the offense. Rose was remanded for pretrial detention fol *386 lowing a preliminary hearing on September 27, 2005.
A. The Information and Prosecution
On October 24, 2005, the Lancaster County District Attorney filed an information charging Rose with drug-possession and firearms offenses. Pursuant to protocol within the District Attorney’s office, state prosecutors referred Rose’s case to the United States Attorney’s Office to be considered for federal prosecution. On January 19, 2006, the U.S. Attorney’s Office preliminarily approved the case for federal prosecution but continued to review the matter during the following two months to determine whether Rose’s case should be coordinated with another federal investigation into criminal activity by one of Rose’s relatives. Ultimately, the federal prosecutors deemed coordination unnecessary, and, on March 13, 2006, the U.S. Attorney sent a letter to Rose’s counsel (“the March 13 letter”) stating that Rose would not be prosecuted federally if he pled guilty to drug and weapons charges in state court and agreed to a negotiated sentence of between 6J/¿ and fifteen years.[1] The letter also stated that “the charges [would] be adopted for federal prosecution” if Rose failed to plead guilty in state court. Throughout much of 2006, Rose’s state proceedings continued without federal involvement.
Rose ultimately refused to enter a plea agreement that satisfied the conditions set out in the March 13 letter, and he pled not guilty to the state charges on September 18, 2006. Nevertheless, Rose’s attorney and the state prosecutor, who had been cross-designated as a special assistant U.S. Attorney to handle any federal prosecution that resulted from the case, continued to negotiate in hopes of reaching a deal that would prompt Rose to accept a state plea and forestall the possible initiation of federal charges. By late November or early December, however, it was clear to the prosecutor that further negotiations would be unproductive.
In late May or early June of 2007, officials in the District Attorney’s office sent Rose’s file to federal prosecutors for the purpose of preparing a federal case against Rose. On June 28, 2007, Rose moved to dismiss the state charges against him under Rule 600 of the Pennsylvania Rules of Criminal Procedure, which requires that criminal trials commence within 180 days after a written complaint is filed. See Pa. R.Crim. P. 600(A)(2) (“Trial in a court case in which a written complaint is filed against the defendant, when the defendant is incarcerated on that case, shall commence no later than 180 days from the date on which the complaint is filed.”). The U.S. Attorney’s Office obtained a federal indictment against Rose on July 10, 2007, after which the Court of Common Pleas dismissed the state charges against Rose, rendering his Rule 600 motion moot.
On September 11, 2007, Rose moved to dismiss the federal indictment on Sixth Amendment speedy trial grounds, arguing that the federal government was “entirely at fault and had no reasonable basis” for allowing the two-year lapse of time after his arrest on state charges. (App. at 38.) - He further argued that dismissal was warranted because he had been held in pretrial detention since his preliminary hearing in September 2005 and that he had suffered prejudice because the delay had impaired his ability to locate witnesses and conduct a physical investigation of the alleged crime.
*387 On March 7, 2008, the District Court denied Rose’s motion to dismiss. The Court concluded that Rose’s federal speedy trial rights attached on the date of the federal indictment and that the pen-dency of his state proceedings had no bearing on those rights. While the Court expressed concern regarding the length of Rose’s state custody, it held that the federal government, as a sovereign distinct from the states, “is not bound by the action of state authorities and that successive state and federal prosecutions are constitutionally permissible.” United States v. Rose, No. 07-CR-883, 2008 WL 650034, at *2 & n. 2 (E.D.Pa. Mar.7, 2008) (quoting United States v. Marler, 756 F.2d 206, 211 (1st Cir.1985)). The Court further observed that only eight months had passed between the return of the federal indictment and the Court’s ruling on the motion to dismiss, that much of that time had been taken up by proceedings associated with motions in limine filed by Rose, and that Rose had identified no witnesses or physical evidence that had become unavailable to him as a result of the alleged delay. Trial commenced on August 19, 2008, and Rose was found guilty of distribution of cocaine and of possession of a firearm by a convicted felon.
B. Sentencing
A presentence report (“PSR”) was prepared, which included the observation that, based on Rose’s offense conduct, his offense level would typically be 28, his criminal history category would be V, and his Sentencing Guidelines range would be 130 to 162 months.[2] However, the PSR further noted that Rose qualified as a career offender, which increased his offense level to 34, his criminal history category to VI, and his Sentencing Guidelines range to 262 to 327 months.
The Court held a sentencing hearing on December 22, 2008. Defense counsel urged the Court to vary below the career offender Guidelines range in light of the disparity between the ordinary offense conduct range and the career offender range. Counsel argued that career offender sentences should be reserved for cases in which the defendant deals in large quantities of drugs, and should not be imposed in cases such as Rose’s, which involved less than one gram of cocaine. The Court, in considering that argument, mistakenly suggested that Rose’s offense conduct range was 140 to 175 months and asked defense counsel to verify that calculation. Defense counsel then contributed to the confusion by incorrectly agreeing that the Court had accurately stated Rose’s offense conduct range. The Court allowed the prosecutor, who did not notice the error, to respond to defense counsel’s argument, after which the Court spoke directly with Rose regarding Rose’s criminal history and prospects for rehabilitation.
The Court adopted the PSR and used Rose’s career offender Guidelines range at the first step of its analysis under United States v. Gunter, 462 F.3d 237 (3d Cir. 2006).[3] At the third Gunter step, however, *388 upon reviewing the sentencing factors enumerated in 18 U.S.C. § 3553(a), the Court granted Rose a significant downward variance from his career offender range and imposed a sentence of 120 months. The Court observed that, “had it not been for the career offender provision, ... the sentence in this case would be significantly lower in terms of the advisory Sentencing Guidelines range.” (App. at 334.) The Court noted that Rose qualified as a career offender because he had multiple pri- or convictions for possession of relatively small amounts of drugs but that those convictions placed him in a sentencing range similar to that frequently seen in large-scale drug-trafficking cases. The Court concluded that a significant downward variance was necessary to prevent an unwarranted sentencing disparity between Rose, who had a history of street-level dealing, and other small-time dealers. The Court never referred to its mistaken statement regarding Rose’s offense conduct Guidelines range. This timely appeal followed.
II. Discussion[4]
Rose advances two grounds for relief on appeal. First, he argues that the District Court erred in denying his motion to dismiss on speedy trial grounds. Second, he argues that the District Court’s misstatement of his offense conduct range under the Guidelines constitutes an erroneous Guidelines calculation that renders his sentence procedurally unreasonable. We address each of those arguments in turn.
A. Speedy Trial
The Sixth Amendment provides that “[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial.” U.S. Const, amend. VI. When a defendant contends that the government has violated his speedy trial rights, the court must employ the four-part balancing test announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to assess the merits of the defendant’s claim. United States v. Dent, 149 F.3d 180, 184 (3d Cir.1998). The Barker test requires the court to evaluate the defendant’s claim in light of “(1) the length of the delay [pending trial], (2) the reasons for the delay, (3) whether, in due course, the defendant asserted his right to a speedy trial[,] and (4) the actual prejudice the defendant suffered as a result.” Id. (citing Barker, 407 U.S. at 530, 92 S.Ct. 2182). If the length of the delay is brief, speedy trial rights are not implicated, and the court need not consider the final three Barker factors. Hakeem v. Beyer, 990 F.2d 750, 760 (3d Cir.1993). However, if the delay is lengthy, the court must inquire into all four Barker factors. Barker, 407 U.S. at 530, 92 S.Ct. 2182. If the Barker calculus leads the court to conclude that the government has violated a defendant’s rights, the court must dismiss the indictment. Id. at 522, 92 S.Ct. 2182. We conduct a de novo review of a district court’s speedy trial analysis. Hakeem, 990 F.2d at 758.
We begin by evaluating the length of the delay pending trial, which requires us to identify the point at which the right to a speedy trial arises. Speedy trial rights apply only after the defendant has been “indicted, arrested, or otherwise officially accused.” United States v. MacDonald, 456 U.S. 1, 6, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). Rose was indicted by a federal grand jury on July 10, 2007. He does not predicate his Sixth Amendment claim upon delay in his federal proceedings, nor does he argue that the pace at which the District Court administered his *389 federal criminal case could support a speedy trial claim. Instead, he argues that his federal speedy trial rights attached not with the return of the federal indictment but on March 13, 2006, when the U.S. Attorney issued the letter stating that he would be prosecuted if he failed to reach a plea deal with state prosecutors. According to Rose, the March 13 letter constituted an official accusation sufficient to trigger federal speedy trial rights because the letter stated that his case would be “adopted for federal prosecution” unless he pled guilty in state court. (Supp. App. at 2.) ■
Rose’s argument is unavailing because federal speedy trial rights attach only at the time of a federal arrest or the institution of “a formal [federal] criminal charge.” MacDonald, 456 U.S. at 6, 102 S.Ct. 1497. We have recently said in a case like this that, “[w]hen an arrest on state charges is followed by a federal indictment, the right to a speedy trial in the federal case is triggered by the federal indictment, and the time period under consideration commences on that date.” United States v. Battis, 589 F.3d 673, 679 (3d Cir.2009).[5] The state arrest and state prosecution do not control the speedy trial analysis because the state and federal governments are separate sovereign entities, and the actions of one cannot typically bind the other. See MacDonald, 456 U.S. at 10 n. 11, 102 S.Ct. 1497 (observing in dicta that “an arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign”).
The March 13 letter is obviously not an indictment and does not otherwise qualify as a formal charge. It neither resulted in Rose’s incarceration under federal authority nor initiated federal criminal proceedings against him. See Hakeem, 990 F.2d at 760 (holding that speedy trial rights are “measured from the date of formal accusation, i.e., from the earliest date of arrest or indictment”). The letter is simply a representation that the federal government would forbear pursuing charges against Rose, provided that he satisfactorily resolved his criminal liability in state court. It did not obligate the federal government to prosecute Rose if he failed to reach a state plea deal, and the U.S. Attorney’s Office could have chosen to take no prose-cutorial action after state plea negotiations turned sour. Moreover, while the odds of indictment were surely high, the government had no guarantee that federal prosecutors would successfully persuade a grand jury to indict Rose. Hence, at the time the letter was prepared, there remained a possibility that the U.S. Attorney’s Office would be unwilling or unable to pursue the case to indictment. Because the letter neither charged Rose nor caused him to be placed in federal custody, it is properly viewed as nothing more than a representation that federal authorities would refrain from attempting to prosecute him if he pled guilty in state court, not as a formal accusation. Accordingly, we conclude that the federal indictment against Rose provides the appropriate point of reference for measuring his federal speedy trial rights. The District Court therefore did not err in refusing to include Rose’s state proceedings when evaluating those rights, and we will affirm the Court’s denial of Rose’s motion to dismiss.
*390 B. Sentencing
Rose appeals his sentence on the ground that the District Court abused its discretion when it erroneously identified the sentencing range that would have applied to him had he not qualified as a career offender. In raising this challenge, Rose does not dispute that the Court correctly calculated his career offender Guidelines range, that the Court relied upon that range at the first step of its analysis under Gunter, or that the Court arrived at the 120-month sentence by varying downward from his career offender range. The only challenge on appeal is that the Court’s erroneous identification of Rose’s offense conduct Guidelines range impairs the validity of his sentence because it infected the analysis at the final Gunter step, the sentencing decision under 18 U.S.C. § 3558(a).
Where, as here, the defendant failed to call an erroneous Guidelines calculation to the Court’s attention, we review for plain error. United States v. Pardo, 25 F.3d 1187, 1193 (3d Cir.1994) (reviewing unpre-served challenge to Guidelines calculation for plain error). “Plain error requires the defendant to demonstrate that the district court committed an error that is plain and that affect[s] substantial rights.” United States v. Vazquez-Lebron, 582 F.3d 443, 446 (3d Cir.2009) (quoting United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotation marks omitted)). An error affects substantial rights if it altered the outcome of the proceedings before the district court. Id. We will affirm a sentence despite an incorrect Guidelines calculation if we “conclude on the record as a whole ... that the error did not affect the district court’s selection of the sentence imposed.” United States v. Langford, 516 F.3d 205, 215 (3d Cir.2008). Thus, plain error analysis consists of three components: (1) the presence of a legal error, (2) that is obvious from the face of the proceedings, and (3) that has an effect on the outcome of the proceedings.
Here, the District Court’s mistaken conclusion as to Rose’s offense conduct Guidelines range does constitute plain error because we are unable to say that the mistake had no effect on the District Court’s ultimate decision on sentencing. We recognize that the Court calculated and applied the correct career offender range at the first step of the Gunter analysis. Thus, there was no error with regard to the legally applicable Guidelines range, as Gunter focuses upon calculation of the range that actually applies to the defendant. We note that, in so holding, we are liberally interpreting the District Court’s obligations to calculate the applicable Guidelines range under Gunter, as the District Court unquestionably erred in identifying the Guidelines range that would have applied had Rose not qualified as a career offender. The Court was then drawn into a discussion of the offense conduct range as an alternative basis for considering how to properly sentence Rose. Indeed, there is some irony here because it is only the District Court’s solicitude for Rose’s interests that has given him any basis to argue procedural error. Had the District Court omitted any mention of the offense conduct range, Rose’s sentence would undisputedly be procedurally sound.[6]
*391 But the Court did mention the offense conduct range and it did so specifically in the context of a discussion about alternative bases for coming to a just sentence. Looking then at the test for plain error that we must apply, the first two steps are essentially uncontested. The District Court erred in its assessment of the offense conduct range, and that error is obvious, in the sense that the true offense conduct range is clearly lower than that cited by the Court.[7] The real dispute is over the third and final step, i.e., whether the error had an effect on the outcome of the proceedings.
While the government argues that the Court’s error was “an immaterial slip of the eye on the sentencing table that could not have affected the sentence imposed,” (Answering Br. at 41), we cannot be so sure. Again, our precedent tells us that, for an “error to be harmless, it must be clear that the error did not affect the district court’s selection of the sentence imposed.” Langford, 516 F.3d at 215. We must “possess a sure conviction that the error did not prejudice the defendant.” United States v. Zehrbach, 47 F.3d 1252, 1265 (3d Cir.1995) (internal quotation marks and citation omitted). Rather than having that level of confidence in this case, we have instead a concern that the District Court may have been using the erroneous offense conduct range as a referent in its sentencing analysis. That concern is furthered by the Court’s comment, while imposing sentence, that “had it not been for the career offender provision, ... the sentence in this case would be significantly lower in terms of the advisory sentencing guideline range.” (App. at 334.) Under these circumstances, we would be hard-pressed to say that it is clear the Court’s mistake had no effect on the sentence it gave to Rose.
It is by no means certain that the District Court would have imposed a different length of imprisonment had it considered the correct offense conduct range during sentencing, but it may have. We are thus bound to conclude that the procedural error identified by Rose rises to the level of plain error. We express no view on whether the same sentence will be warranted upon resentencing.
III. Conclusion
Because Rose has failed to establish that the government infringed upon his federal speedy trial guarantees, the judgment of conviction will be affirmed. However, because the Court committed a plain error at sentencing affecting Rose’s substantial rights, we will vacate the sentence and remand for further proceedings consistent with this opinion.

. According to the letter, Rose's federal Sentencing Guidelines range would have been 111-123 months, were he convicted in federal court. His range under the Pennsylvania Sentencing Guidelines on comparable charges would have been 36-48 months.

. The 2008 edition of the United States Sentencing Guidelines Manual was used to prepare Rose's PSR.

. Gunter requires district courts to follow a three-step procedure when imposing a sentence. First, the district court must calculate the defendant’s Sentencing Guidelines range without regard to departure motions. Gunter, 462 F.3d at 247. Second, the court must rule on the parties’ motions for upward or downward departures. Id. At the conclusion of the second step, the district court must recalculate the defendant’s Sentencing Guidelines range to reflect its ruling on the departure motions. Id. Third, the district court must consider the factors enumerated in § 3553(a) and exercise its discretion to craft a sentence that is appropriate under the circumstances of each particular case. Id.

. The District Court possessed jurisdiction over Rose’s criminal case pursuant to 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

. As in Battis, Rose was initially indicted for state offenses and subsequently charged with federal crimes arising from the same underlying conduct. As in Battis, Rose argued that his federal speedy trial rights attached while his state proceedings were pending. The only significant distinction between Battis and the present case is that the defendant in Battis did not receive an offer of prosecutorial forbearance from the U.S. Attorney.

. Judge Rendell would hold that, since the District Court calculated the applicable Guideline range correctly, there was no procedural error caused by the incorrect reference to the offense conduct range, and the sentence was “procedurally sound.” However, she does not disagree with remanding to permit the Court to re-sentence Rose if the mistake as to the offense conduct range influenced the sentence the Court imposed.

. Of course, in another important sense, it was not obvious at all, as the silence of government's counsel and the misguided affirmation of defense counsel help demonstrate. Criminal sentencing can be complex and is nearly always a time when a multitude of important considerations are actively being addressed by the court and counsel. In those circumstances, a flaw which is obvious in hindsight may pass unnoticed. It nevertheless remains an obvious flaw on the face of the record.