**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1103
_____

UNITED STATES OF AMERICA

v.

STEVEN MENSAH-YAWSON,
Appellant
_____

On Appeal from the United States District Court
for the District of Western Pennsylvania
(D.C. Criminal No. 2-09-cr-00276-001)
District Judge: Honorable Gary L. Lancaster
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 19, 2012

Before: AMBRO, and VANASKIE and VAN ANTWERPEN, *Circuit Judges*

(Filed June 20, 2012)
_____

OPINION OF THE COURT
_____

VAN ANTWERPEN, *Circuit Judge*.

Appellant Steven Mensah-Yawson appeals his judgment of conviction after being

found guilty by a jury of conspiring to commit an offense involving counterfeit securities.

He claims his rights to a speedy trial, provided in both the Speedy Trial Act ("STA"), 18

U.S.C. § 3161, et seq., and the Sixth Amendment of the United States Constitution, were violated. We will affirm.

## I.

We write for the benefit of the parties and recite only the facts essential to our disposition. Mensah-Yawson and three codefendants (Stacy Nicholas, James Greer, and Daniel Poole) were charged on September 15, 2009 by a grand jury sitting in the Western District of Pennsylvania with conspiring to commit an offense against the United States in violation of 18 U.S.C. § 371. Specifically, the individuals were charged with conspiring to make, utter, and possess counterfeit securities in violation of 18 U.S.C. § 513(a). Mensah-Yawson was arraigned on October 20, 2009. He waived his detention hearing, and thus remained in custody while Poole and Nicholas were released on bond. On the same day Mensah-Yawson was arraigned, his codefendant Nicholas filed a motion to extend the time for filing pretrial motions.

On November 18, 2009, Mensah-Yawson requested additional time to file pretrial motions.[1] The District Court granted his request and extended his time to file pretrial motions until December 18, 2009. On January 11, 2010, Mensah-Yawson moved *nunc pro tunc* to extend the filing deadline to February 10. He finally filed his three pretrial motions on February 19. The government, after requesting and being granted additional time to respond, filed its response on March 12. A hearing on the motions was not set at

---

[1] Mensah-Yawson was represented by counsel throughout the proceedings, and all relevant motions discussed in this opinion were filed by counsel.

the time because Mensah-Yawson's codefendants had also extended their pretrial motion filing deadlines past this time.

A warrant was issued on June 3 for the arrest of codefendant Poole after he violated the conditions of his electronic monitoring. At this time, Poole's extension of time for filing pretrial motions ran until July 2. On June 4, Mensah-Yawson filed a Motion for Relief from Prejudicial Joinder in which he acknowledged that the STA clock would normally be tolled while the pretrial motions of all codefendants were pending. Mensah-Yawson argued that he was prejudiced by continuing to wait for his codefendants, who were on pretrial release and thus had no "pressing interest in proceeding to trial quickly." He requested that his case be severed and that a hearing be held on his pretrial motions. Importantly, he only sought *severance* and did not argue that the case against him should be *dismissed*. The government opposed Mensah-Yawson's motion.[2]

The District Court never formally ruled on the severance motion, presumably because subsequent events rendered severance unnecessary. Greer pleaded guilty on June 15. Poole appeared at his bond revocation hearing on July 22, and pleaded guilty on July 30. Nicholas had obtained an extension to file her pretrial motions until September 29, but notified the District Court of her intention to enter a guilty plea on September 17. She eventually did so on November 18.

---

[2] The government noted that, if Poole was not brought back into custody by July 2, it would not object to the severance of Poole from Mensah-Yawson and codefendant Nicholas.

Mensah-Yawson's pretrial hearing was also held on October 21, and all pretrial matters were resolved. The District Court scheduled the trial for November 15, and the government, without opposition, sought to continue the trial date because of witness unavailability. On October 22, the motion was granted and the trial was set for December 13.

Mensah-Yawson was found guilty by a jury on December 15, 2010. At no point prior to trial did he seek dismissal of the charges on speedy trial grounds. He was sentenced to time served with two year's supervised release,[3] and ordered to pay restitution.

## II.

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## A.

Mensah-Yawson argues that the delay between his indictment and the start of his trial violated the STA.[4] The STA requires that the trial commence "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such

---

[3] The supervised release is to start upon his release by immigration officials or upon his return to the United States. The nature of the immigration charges are not clear from the record in this case, although Mensah-Yawson has not yet been removed.

[4] Mensah-Yawson calculates that, before the start of his trial, he waited 456 days from the filing of the indictment, 421 days from the date he was arraigned, 223 days from when the government responded to his pretrial motions, and 139 days from when he requested severance from his codefendants. These calculations do not take into account the many periods of time that would be excluded under the various tolling provisions of 18 U.S.C. § 3161(h), as discussed below.

4

charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The STA provides for the dismissal of the indictment in cases where its provisions have been violated. § 3162(a)(2). Defendants "must request this relief, however." *United States v. Register,* 182 F.3d 820, 828 (11th Cir. 1999). "Failure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2).

As noted, Mensah-Yawson did not move to dismiss the charges under the STA. By failing to do so, he waived his rights to pursue dismissal and thus did not "preserve [his] statutory speedy trial claim for appellate review." *United States v. Littrice*, 666 F.3d 1053, 1059 (7th Cir. 2012); *see also United States v. Spagnuolo*, 469 F.3d 39, 46 (1st Cir. 2006) ("[A] defendant who fails to make a timely motion to dismiss based on a speedy indictment claim does not obtain the benefit of plain error review."). Mensah-Yawson's argument that he satisfied the STA requirement with his motion to sever is incorrect. His motion correctly identified the exclusions of time from the speedy trial computations applicable to his case—time while pretrial motions are pending, 18 U.S.C. § 3161(h)(1)(D), and reasonable periods of time when a defendant is joined with codefendants, § 3161 (h)(6). Mensah-Yawson recognized that, if the charges were severed, his codefendants would no longer be relevant for calculating his time under the STA. To that end he sought to sever himself from his codefendants, arguing that joinder was prejudicial. At no point, however, did he assert that his STA rights were violated, nor did he seek to have his charges dismissed on this ground. We therefore must conclude that he waived his claim.

5

Even assuming he had not waived his claim, there was no violation of his rights under the STA.[5] Although roughly fifteen months passed between his arraignment and the start of the trial, Congress has decided that certain periods of time are not to be included in calculating the seventy-day period. The two relevant periods of time that are not included for the purposes of this case are the "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," 18 U.S.C. § 3161(h)(1)(D), and a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted," § 3161(h)(6). In particular, "after defendants are joined for trial, an exclusion applicable to one defendant applies to all codefendants." *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993) (citations and internal quotation marks omitted).

Mensah-Yawson's clock started on October 20, 2009 when he was arraigned along with the last of his codefendants. 18 U.S.C. § 3161(c)(1). But, on that same day, the District Court granted Nicholas's motion to extend the time for filing pretrial motions, effectively tolling the speedy trial clock.[6] *See* District Court Docket #43. The District Court used the appropriate "ends of justice" standard required by § 3161(h)(7) in granting the many extensions requested by Mensah-Yawson and his codefendants. *See Bloate v. United States*, 130 S. Ct. 1345, 1355 (2010) ("Subsection (h)(7) provides that delays

---

[5] "We exercise plenary review over the district court's application of the [STA]." *United States v. Willaman*, 437 F.3d 354, 357 (3d Cir. 2006).
[6] Mensah-Yawson, as well as Greer and Poole, also filed motions that would toll the clock shortly after this date.

'resulting from a continuance granted by any judge' *may* be excluded, but only if the judge finds that 'the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial' and records those findings."). Thus the latest extension for filing pretrial motions, given to Nicholas on August 31, extending her filing deadline to September 29, applies to Mensah-Yawson as well.

Nicholas's change in plea further tolled the speedy trial clock for the time between her announcing her intention to plead guilty, and her actual guilty plea on November 18, 2010. *United States v. Barnes*, 159 F.3d 4, 15 (1st Cir. 1998) ("[A]ll of the days between the date a codefendant files a motion for a change of plea and the date of the change of plea hearing itself are excludable from the [Act's] seventy-day time limit." (citation omitted)); *United States v. Jenkins*, 92 F.3d 430, 440 (6th Cir. 1996) ("Since a change of plea is a motion requiring a hearing, the entire amount of time between [the change and the hearing] is excludable."). The speedy trial clock was thus tolled through November 18, the date that Nicholas pleaded guilty.

Furthermore, the speedy trial clock was automatically tolled for the period relating specifically to the multiple pretrial motions that Mensah-Yawson filed on February 19.[7] The hearing on these motions was not held until October 21. Accordingly, these motions extended the excludable time to October 21. Even more time is excludable after that date, as the government filed a motion seeking to postpone the trial from November 15 because of witness conflicts. Mensah-Yawson did not object, and the trial date was

---

[7] Mensah-Yawson's initial request for additional time to file pretrial motions occurred on November 18, 2009, and was followed by his moving *nunc pro tunc* on January 11, 2010 to extend the filing deadline into February.

moved to December 13. This continuance made the time preceding trial excludable pursuant to 18 U.S.C. § 3161(h)(3)(A).

When all of the above exclusions are taken into account, it is clear that Mensah-Yawson's STA right to a trial within seventy days of his arraignment was not violated. We will deny his challenges to his conviction on this ground.

**B.**

Mensah-Yawson also argues that the delay preceding his trial violated the Sixth Amendment's guarantee of a "speedy and public trial." The failure of Mensah-Yawson to raise this argument below means we review his challenge for plain error.[8] Fed. R. Crim. P. 52(b); *see also United States v. Gearhart*, 576 F.3d 459, 462–63 (7th Cir. 2009).

When an appellant argues the government has violated his or her speedy trial rights, we employ the four-part balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 92 (1972), to assess the merits of his or her claim. *United States v. Dent*, 149 F.3d 180, 184 (3d Cir. 1998). The *Barker* test requires that we evaluate the appellant's claim in light of "[1] whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker*, 407 U.S. at 530). "None of these factors is 'either a necessary or

---

[8] To demonstrate plain error an appellant must show: "(1) that there was an error, i.e., a deviation from a legal rule, (2) that the error was 'plain,' i.e., clear or obvious, and (3) that the error affected his substantial rights." *United States v. Corso*, 549 F.3d 921, 928 (3d Cir. 2008).

sufficient condition,' and the factors 'must be considered together with such other circumstances as may be relevant.'" *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009) (quoting *Barker*, 407 U.S. at 533). If Mensah-Yawson's right to a speedy trial has been violated, we must dismiss the indictment. *Id*.

The first factor, the length of the delay, presents a threshold matter in which we must determine whether the delay warrants inquiry into all four factors. *Barker*, 407 U.S. at 530 ("The length of the delay is to some extent a triggering mechanism."). "If the delay is relatively brief, then it is not necessary to consider the other *Barker* factors." *Battis*, 589 F.3d at 678. "If the delay is sufficiently long, courts assess the extent to which the delay was long enough to 'intensify' the prejudice caused by the delay." *Id*. This Court has previously determined that a fourteen-and-one-half month delay is sufficient to warrant inquiry into the other factors. *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993). Given that Mensah-Yawson's delay was roughly fifteen months, we must weigh the *Barker* factors.[9]

Regarding the first factor, "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652. We must examine "the peculiar circumstances of [each] case" in deciding what weight to give to the delay. *Barker*, 407 U.S. at 530–31. We do not find the roughly fifteen-month delay in this case sufficiently long to "intensify" any prejudice it allegedly caused. The case entailed

---

[9] The time that Mensah-Yawson spent in the custody of Pennsylvania state authorities on similar charges does not affect our analysis. *Battis*, 589 F.3d at 679 ("When an arrest on state charges is followed by a federal indictment, the right to a speedy trial in the federal case is triggered by the federal indictment, and the time period under consideration commences on that date.").

charges against four codefendants for conspiring to counterfeit securities. "[T]he delay that can be tolerated" for prosecuting a more complicated crime is obviously different than what can be tolerated "for an ordinary street crime." *Id.* at 531. As a result, the first factor does not weigh in Mensah-Yawson's favor.

Nor does the second factor. *Barker* also tells us that the second factor, the reason for delay, is to be given different weight based upon the nature of the reason. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Barker,* 407 U.S. at 531. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* The government "bears the burden to justify the delay," *Hakeem*, 990 F.2d at 770, and in this case it has done so. Mensah-Yawson, as well as his codefendants, obtained a number of extensions for filing pretrial motions. The government obtained only a one-month postponement of the trial to avoid a conflict for a government witness. These are both appropriate justifications for the delay, and thus weigh against Mensah-Yawson's speedy trial claim.

The third *Barker* factor (i.e., whether the defendant asserted his right to a speedy trial) is the only one that weighs slightly in Mensah-Yawson's favor. "[A] defendant's claim that the right is being violated provides strong evidence that it actually was violated." *Battis*, 589 F.3d at 681. As discussed earlier, Mensah-Yawson's motion to sever under Federal Rule of Criminal Procedure 14 articulated a concern about the time it

10

was taking for him to go to trial. For the benefit of the District Court, he should have more clearly expressed his concerns or clearly raised them again within the six-month period between his motion to sever and the start of his trial. Assuming, for the purpose of this appeal, that the filing of the motion to sever and its identification of speedy trial tolling concepts was sufficient under the Constitution, this factor would only weigh slightly in Mensah-Yawson's favor and would not be sufficient to overcome the other factors we must consider.

The fourth and final *Barker* factor (i.e., prejudice to the defendant) is assessed "'in light of the interests . . . which the speedy trial right was designed to protect." *Battis*, 589 F.3d at 682 (quoting *Barker*, 407 U.S. at 532). A defendant can establish prejudice in two ways. First, he can demonstrate that "he was subject to 'oppressive pretrial incarceration,' that he suffered 'anxiety and concern' about the impending trial, or that his defense was impaired as a result of the delay." *Id.* (quoting *Barker*, 407 at 532). Second, he can claim prejudice without providing "affirmative proof of particularized prejudice" if the delay is excessive. *Doggett*, 505 U.S. at 655. Regarding this second route of presumptive prejudice, the Supreme Court has noted that "its importance increases with the length of delay." *Id.* at 656. "Given that 'time's erosion of exculpatory evidence and testimony' can hinder a defendant's ability to prove that his defense was impaired by a delay," federal courts "'generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.'" *Battis*, 589 F.3d at 682 (quoting *Doggett*, 505 U.S. at 655–66).

11

Mensah-Yawson argues that he was prejudiced by the fact that he "was unable to substantially assist in his defense."   He also contends that the roughly fifteen-month delay gives rise to a presumption that prejudice exists.  We reject both arguments.  First, Mensah-Yawson has provided nothing from which we can gauge his claim that his pretrial confinement impaired his ability to assist in his defense.  The Supreme Court has recognized that "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'"  *Doggett*, 505 U.S. at 655 (quoting *Barker*, 407 U.S. at 532).  Despite the difficulty that some defendants may have in making this showing, we will not accept a "blanket statement [that] gives no indication as to the content and relevance [of the lost assistance], and how its absence impaired" the defense in the case.  *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009).  Mensah-Yawson has only provided precisely this type of empty assertion, and thus has failed to demonstrate actual prejudice.

Second, we have held that a delay of "fourteen and one-half months . . . is insufficient to allow an inference of prejudice solely from the length of the delay." *Hakeem*, 990 F.2d at 764.  The delay in this case is nearly identical to that in *Hakeem*, and consequently we will not infer prejudice solely from the length of delay.

Mensah-Yawson has thus failed to show prejudice that would tip the fourth factor in his favor.  Assuming that the third of the four *Barker* factors weighs slightly in favor of finding that Mensah-Yawson's right to a speedy trial was violated, the other three weigh against such a finding.  As a result, we conclude that Mensah-Yawson was not deprived of his right to a speedy trial under the Sixth Amendment.

12

**III.**

For the foregoing reasons, we will affirm Mensah-Yawson's judgment of conviction and sentence.