No. 123,383

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

CASS WAYNE MCDONALD,
*Appellee*.

SYLLABUS BY THE COURT

1.

The speedy trial assessment considers the totality of the circumstances with special emphasis on four factors: length of the delay, reason for the delay, defendant's assertion of his or her right, and prejudice to the defendant.

2.

Under the facts of this case, the State's delay of over six years and three months between charging the defendant with child rape and arresting the defendant is presumptively prejudicial.

3.

When considering the second factor—the reason for the delay—the court assesses responsibility for the delay as between the State and the defendant. The State's inability to arrest a defendant because of the defendant's own evasive tactics is a valid reason for delay. But in that event, the State bears the burden to show that it took reasonably diligent efforts to pursue an evasive defendant.

1

4.

When assessing the fourth factor—prejudice—for a constitutional speedy trial analysis, we consider both actual prejudice and, in a proper case, presumed prejudice flowing from excessive delay.

5.

Courts consider three factors when evaluating actual prejudice: oppressive pretrial incarceration, the defendant's anxiety and concern, and most importantly, the impairment of one's defense.

6.

To meet the burden to show actual prejudice, the defendant cannot rely on generalities or the passage of time but must show how the delay thwarts his or her ability to defend oneself.

7.

When the State has been negligent, prejudice can be presumed if the delay has been excessive. A delay of over six years attributable to the State is long enough to give rise to a presumption that the defendant's trial would be compromised, and the defendant would be prejudiced.

8.

When a defendant relies on a presumption of prejudice to establish the fourth factor and identifies a delay of sufficient duration to be considered presumptively prejudicial, this presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay and can be rebutted if the State affirmatively proves that the delay did not impair the defendant's ability to defend oneself.

Appeal from Shawnee District Court; CHERYL A. RIOS, judge. Opinion filed March 11, 2022. Affirmed.

*Jodi Liftin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellant.

*Debra J. Wilson*, of Capital Appeals and Conflicts Office, for appellee.

Before ATCHESON, P.J., HILL and GARDNER, JJ.

GARDNER, J:  In 2011, police interviewed Cass Wayne McDonald about sexual assault allegations. In 2013, the State charged McDonald with rape of a child under 14, yet the State did not arrest him until 2019. McDonald moved to suppress his 2011 statements to police and to dismiss the State's complaint based on a speedy trial violation. The district court granted both motions, and the State appeals both decisions. Finding the district court properly dismissed the State's complaint, we affirm without reaching the merits of the suppression issue.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2011, four-year-old P.S.E. and her father (Father) went to the Topeka Police Department and reported that sometime during the previous few months Cass Wayne McDonald had inserted his finger into P.S.E.'s vagina. McDonald was related to P.S.E. through her mother and sometimes stayed in the same house as P.S.E. during the summer when the assault reportedly occurred. Father, who shared custody of P.S.E., learned of the incident after he picked P.S.E. up from her mother's home and promptly contacted police.

3

*Investigation*

P.S.E. participated in a "Safe Talk" interview in Topeka shortly after disclosing the incident to Father. Detective Braden Palmberg watched P.S.E.'s Safe Talk interview through a video feed, and then spoke to McDonald. McDonald agreed to meet Palmberg at the police station for questioning on November 5, 2011.

Palmberg never gave McDonald *Miranda* warnings. McDonald told Palmberg he lived on the Navajo Reservation in New Mexico before moving to Topeka in 2011 and that his older brother had been convicted of touching his own daughter in New Mexico. McDonald claimed that those allegations were false but his brother just "went with it."

Palmberg then confronted McDonald with P.S.E.'s allegations, asking him to explain why P.S.E. reported him. Palmberg also told McDonald that one of P.S.E.'s friends had claimed McDonald touched her inappropriately. McDonald denied touching either of the girls or ever committing that type of act.

Palmberg asked McDonald if he was considered a suspect in the New Mexico crime, and McDonald denied that he was. Palmberg asked McDonald if he ever wanted to touch P.S.E. but McDonald denied that too. When pressed to explain how P.S.E. could give Palmberg details about the event, McDonald persisted in his denial. McDonald explained that he did not know why P.S.E. claimed he touched her, but suggested Father may have made up the allegations. McDonald also felt he may have been accused because he was the only "boy" in his grandmother's house, which is where the incident allegedly occurred. Still, McDonald claimed he was never left alone there with P.S.E. Palmberg released McDonald without arresting him.

Palmberg interviewed McDonald a second time on November 30, 2011, again without giving McDonald *Miranda* warnings. Palmberg told McDonald he knew

4

McDonald had recently been interviewed by Federal Bureau of Investigation (FBI) agents about the New Mexico incident with McDonald's niece. McDonald told Palmberg that he had explained to FBI agents that he may have accidentally touched his niece in New Mexico while changing her diaper, but he never purposefully touched or penetrated her in any way. McDonald denied that anything like that had happened with P.S.E.

When accused of committing all acts alleged and showing a pattern, McDonald continued to maintain his innocence in this case. But McDonald eventually said he needed help with "not touching little girls, or something like that." McDonald then admitted he sometimes wanted to touch little girls, including P.S.E., but denied ever doing it. McDonald said when the children were around, he would take long walks or play video games to make sure he was never put in a compromising situation. He said that when he moved to Kansas, he began growing his fingernails long to ensure he would not engage in that type of behavior. But McDonald still denied touching, reaching out to, or grabbing P.S.E.

McDonald told Palmberg he was guilty of the offense his brother had been convicted of in New Mexico. But when asked what he had done, McDonald explained that he was referring to the accidental grazing of his niece's vagina during a diaper change that he had described earlier. But McDonald continued to deny ever touching P.S.E. Palmberg did not arrest McDonald when the interview ended.

*Search for McDonald*

A week or two after Palmberg's second interview of McDonald, Palmberg met with P.S.E.'s grandmother (Grandmother). She told Palmberg that McDonald had moved back to the reservation in New Mexico. In April 2012, Palmberg completed an affidavit detailing his investigation. Palmberg did not have any more contact with McDonald, his family, or other law enforcement agencies about this case after April 2012.

In May 2013, the State charged McDonald with one count of rape of a child under 14 years old based on P.S.E.'s allegation. The district court issued a warrant for McDonald's arrest about a week later. The warrant was entered into the NCIC database and remained active for several years. McDonald was also listed on the Northeast Kansas Most Wanted list.

In September 2015, John Peterson, an officer assigned to the United States Marshals Service Violent Offender Fugitive Task Force, contacted the Marshal's Office in Farmington, New Mexico, to discuss the warrant for McDonald's arrest. Peterson notified the marshals that McDonald might be in Farmington, New Mexico, and asked them to search the surrounding areas.

*Arrest and Pretrial Proceedings*

Police eventually apprehended McDonald in July 2019 in Farmington, Utah. It was later discovered that from 2016 to 2019, McDonald had worked for a roofing company on projects in Wyoming and Utah. McDonald had obtained that position using his legal name and social security number. While working on an air force base in Utah in June 2019, McDonald forgot the pass he had been issued and needed to enter the base. He was required to undergo another background check to get a new pass. While performing this additional background check, McDonald's employer discovered the active warrant for McDonald's arrest and contacted police.

After police arrested McDonald, he attended his first appearance on the State's charge in August 2019. During pretrial proceedings, McDonald moved to suppress his statements to police, arguing that he had been subject to custodial interrogation without having been given *Miranda* warnings and that his statements had been made involuntarily. The district court held several hearings on the suppression motion, but we

6

do not find it necessary to set them out in detail. The district court later granted McDonald's motion to suppress, agreeing that he had been subject to custodial interrogation without receiving *Miranda* warnings and that his statements had been made involuntarily.

*The Motion to Dismiss*

McDonald also moved to dismiss his case based on a constitutional speedy trial violation because of the delay after his warrant issued in 2013. The district court held two hearings to consider the motion to dismiss. After the parties' closing arguments, the district court made findings on several factors applicable to McDonald's speedy trial claim but asked the parties to submit more briefing on the final factor—prejudice to McDonald.

The court later granted McDonald's motion to dismiss based on a constitutional speedy trial violation, finding the delay caused actual prejudice to McDonald's defense because evidence showed it unlikely that McDonald could receive a fair trial.

The State filed an interlocutory appeal from the district court's order suppressing McDonald's statements and later filed an amended notice of appeal from the district court's order dismissing its complaint.

DID THE DISTRICT COURT ERR IN GRANTING MCDONALD'S MOTION TO DISMISS BASED ON A SPEEDY TRIAL VIOLATION?

We first decide whether the district court properly dismissed the State's complaint. This is because if the district court was correct, the State's claims about the suppression of evidence will be moot. Cf. *State v. Renteria*, No. 99,309, 2009 WL 500953, at *2

7

(Kan. App. 2009) (unpublished opinion) (affirming order of dismissal based on speedy trial violation and finding decision rendered suppression issue moot).

*Standard of Review and Basic Legal Principles*

When considering a district court's decision on a defendant's constitutional speedy trial right, appellate courts review the supporting factual findings for substantial competent evidence, but we review the ultimate legal conclusion drawn from those facts de novo. *State v. Owens*, 310 Kan. 865, 868, 451 P.3d 467 (2019). "Whether a lower court properly applied the *Barker* factors is a question of law subject to unlimited review." *In re Care & Treatment of Ellison*, 305 Kan. 519, 533, 385 P.3d 15 (2016).

The Sixth Amendment to the United States Constitution grants every defendant the "right to a speedy and public trial." Similarly, section 10 of the Kansas Constitution Bill of Rights guarantees Kansas defendants "[i]n all prosecutions . . . a speedy public trial by an impartial jury." See *Owens*, 310 Kan. at 869.

> "'The constitutional protection of a speedy trial attaches when one becomes accused and the criminal prosecution begins, usually by either an indictment, an information, or an arrest, whichever first occurs.' *State v. Taylor*, 3 Kan. App. 2d 316, 321, 594 P.2d 262 (1979).
>
> . . . .
>
> "'The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.' [Citations omitted.]" *State v. Rivera*, 277 Kan. 109, 112-113, 83 P.3d 169 (2004).

Courts consider these four factors when determining speedy trial claims:

- Length of the delay;
- reason for the delay;
- defendant's assertion of his or her right; and
- prejudice to the defendant.

See *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). These factors are nonexclusive. 407 U.S. at 530. The speedy trial assessment in a given case looks at the totality of the circumstances with special emphasis on those four considerations. See *Ellison*, 305 Kan. at 531 (describing *Barker* as establishing an "'ad hoc'" approach to assessing speedy trial rights). "None of these four factors, standing alone, is sufficient for finding a violation. Instead, the court must consider them together along with any other relevant circumstances." *Rivera*, 277 Kan. at 113.

*First Factor:  Length of Delay*

The district court found the total length of the delay was six years and three months, and neither party quibbles with that. The State charged McDonald in May 2013, yet his arrest and first appearance were not until July and August 2019. See *Rivera*, 277 Kan. at 112 (finding constitutional speedy trial rights attach at formal charging or arrest, whichever occurs first). The State concedes that this delay is "sufficient to constitute presumptive prejudice." Still, the State argues that the presumption was undercut because McDonald was not incarcerated and was unaware the State charged him with a crime. Yet when arguing this issue in the district court, the State "stipulated that the period of six years is presumptive" for purposes of considering this first factor. So the record shows the State acquiesced to the district court's finding and is thus precluded from challenging it on appeal.

9

At any rate, the finding of presumptive prejudice was legally sound. See *Rivera*, 277 Kan. at 114 (244 days from time warrant served to preliminary hearing found presumptively prejudicial); *State v. Ruff*, 266 Kan. 27, 32, 967 P.2d 742 (1998) (three years presumptively prejudicial); *State v. Fitch*, 249 Kan. 562, 563-64, 819 P.2d 1225 (1991) (402 days presumptively prejudicial). And as the *Barker* Court pointed out, a delay that might be tolerable for a "serious, complex conspiracy charge" would be entirely unacceptable for "an ordinary street crime." 407 U.S. at 531. McDonald's charge of child rape, although serious, is not complex enough to warrant a delay of over six years.

The length of delay operates, in part, as a gatekeeper to the remaining factors. *Barker*, 407 U.S. at 530-31; *State v. Waldrup*, 46 Kan. App. 2d 656, 679, 263 P.3d 867 (2011). So when a defendant shows, given the circumstances of the case, that the trial delay is likely or presumptively prejudicial, we analyze the other three *Barker* factors. See *Ellison*, 305 Kan. at 534 (finding that presumptive prejudice simply triggers a full judicial review of the circumstances to assess the claimed constitutional deprivation). We do so here.

*Second Factor:  Reason for Delay*

"The flag all litigants seek to capture is the second factor, the reason for delay." *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S. Ct. 648, 88 L. Ed. 2d 640 (1986). This factor essentially tries to assess responsibility for the delay as between the government and the defendant. *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). Kansas courts must assign weight to the reasons one of the party's actions caused a delay to the defendant's case. Deliberate actions, such as "a deliberate attempt by the State to thwart the defense," should be weighed heavily against the State. *Rivera*, 277 Kan. at 114. But "a more neutral reason, like negligence or a crowded court docket, would weigh less heavily against the State." 277 Kan. at 114. The

10

State bears the burden to justify the delay. *Hakeem v. Beyer*, 990 F.2d 750, 770 (3d Cir. 1993).

The district court faulted the State for causing the delay, finding it had acted negligently in locating McDonald:

> "There was no evidence that Defendant intentionally tried to hide his location or his identity. Defendant offered evidence that he had been working for the same company from 2016 until his arrest and he paid taxes. A search using his social security number by a defense investigator revealed a phone number and a post office box in Defendant's name for 7 years. . . . There is no indication that law enforcement would not have been able to discover his location and arrest him if they had made an effort to do so."

First, the State claims that the district court erred by finding that McDonald did not intentionally try to hide from police, as McDonald's flight from Kansas to New Mexico within two weeks after Palmberg interviewed him shows his motive to avoid detection. We agree that the State's inability to arrest or try a defendant because of the defendant's own evasive tactics constitutes a valid reason for delay. *United States v. Villarreal*, 613 F.3d 1344, 1351 (11th Cir. 2010); see *United States v. Richardson*, 780 F.3d 812, 817 (7th Cir. 2015) (one's right to a speedy trial is not violated "where the defendant prevents a speedy trial from being held because he has fled, or refused to enter, the jurisdiction"). But the record fails to show why McDonald returned to New Mexico in 2011. He had come to Kansas from New Mexico, stayed for the summer, and lived with relatives. Whether the date of his return to New Mexico was previously planned, was due to lack of work, or was rather an attempt to flee the jurisdiction due to Palmberg's interrogation is not shown by the record. Yet the record does show that after 2013, McDonald kept a phone number and post office box, worked openly under his legal name, and used his social security number in New Mexico and other states. Those acts seem inconsistent with a deliberate effort to evade detection.

11

Second, the State asserts that the district court erred by considering Palmberg's actions in determining the State lacked reasonable diligence, because one calculates delay for constitutional speedy trial purposes from the 2013 date the State filed its complaint, and Palmberg's acts all predated that act. We note that using that same time standard provides another reason for us not to consider McDonald's "flight" in 2011.

We agree that Palmberg's acts are immaterial here. Palmberg tried to get in touch with McDonald after the 2011 interviews by contacting Grandmother a week or two after his last interview with McDonald. Grandmother told Palmberg that McDonald had moved back to New Mexico to live on a reservation. Palmberg sent McDonald's case file to an FBI agent in New Mexico in April 2012 and had no more involvement in the case. Nothing shows that his acts or inactions caused any delay between the charging date in May 2013 and McDonald's arrest in 2019.

Still, the record is sparse as to efforts the State took after May 2013 until McDonald was arrested in 2019. Palmberg testified that once McDonald's arrest warrant issued, it became the warrants division's duty to take care of the matter. Palmberg had no power or control over other state jurisdictions. Generally when a defendant cannot be located, police "issue attempt to locates [and distribute] bulletins to surrounding agencies"; they can also add fugitives to the Kansas most wanted lists.

The State called Peterson to testify at the second hearing on the motion to dismiss. He had around nine years' experience locating and apprehending violent offenders through warrants or probable cause arrests. He testified about typical procedures used to locate fugitives and his attempts to locate McDonald.

Peterson explained that all warrants assigned to the Third Judicial District are maintained by the Shawnee County Sheriff's Office Warrants Unit. The warrants are entered into the NCIC database by warrants clerks, which provides nationwide notice of

12

active warrants. Then a team of two deputies is assigned to locate and apprehend the fugitive. That team "will work the warrant until they don't have any other avenues to take." Once a fugitive leaves the state, the warrant clerks will contact the necessary jurisdictions to let them know there is an active warrant in Shawnee County. In his experience, it was "a little harder to apprehend on a Native American reservation" because they were governed by federal law enforcement and the Bureau of Indian Affairs instead of by local law enforcement.

Peterson was assigned McDonald's case in September 2015. McDonald's "warrant jacket"—a manila envelope deputies use to keep track of information and attempts to locate a fugitive—showed six entries, encompassing over six years. Peterson wrote only one of those entries—a "lead" that McDonald was believed to be in "Farmington, New Mexico."

Peterson testified that someone had entered McDonald's warrant in the NCIC database and placed it on the Northeast Kansas Most Wanted list, which he described:

> "The Northeast Kansas Most Wanted is a group effort between local media and the Shawnee County Sheriff's Office in wanted fugitives that is either a severe crime or we just can't—are unable to locate, and we need the public's assistance. The local news media will put their photo up on their Facebook page and on the news saying this person is wanted, trying to generate tips or self surrender or someone just turning them in."

Peterson testified that after receiving the Farmington lead on McDonald's warrant, he notified New Mexico's Marshal's Office. Then, for the next four years, Peterson simply conducted "database searches" for McDonald as he did not have jurisdiction to act in New Mexico or on the Navajo Nation Reservation. But McDonald was eventually found in Farmington, Utah—not Farmington, New Mexico, as was previously thought—on July 29, 2019. Police then booked McDonald into the Shawnee County Department of Corrections in Topeka, Kansas, on August 9, 2019.

13

Based on the record, we cannot agree with the State that its officers made every effort available to find McDonald and should not be faulted for the failures of other jurisdictions. In support of that assertion, the State shows only that it made six inquiries over six years. Although the State did more here than did the government in *Doggett*, where the court found a complete absence of any effort on the government's part to prosecute Doggett for over six years, 505 U.S. at 652-53, the State has failed to show that it took reasonably diligent efforts to pursue McDonald. See *United States v. Velazquez*, 749 F.3d 161, 180 (3d Cir. 2014) (finding government not reasonably diligent when its activity was limited to checking the NCIC eight times in five years and placing Velazquez on the "Most Wanted" list for the Philadelphia DEA office, when defendant was not evasive).

And McDonald's apprehension was ultimately the result of a simple background check related to his employment. John Perrine, an investigator with the Public Defender's Office, testified to that. He contacted McDonald's former employer, Craig Peters, who wrote an affidavit about McDonald's employment. In the affidavit, Peters explained that he had hired McDonald in 2016. Once hired, McDonald completed standard Internal Revenue Service documents and showed the company his social security card. During June and July 2019, McDonald worked on a job at Hill Air Force Base in Utah. McDonald had to submit to a background check to enter the base. McDonald passed the initial background check and worked on the base until July 19, 2019, when McDonald forgot his pass and had to undergo a second background check. That check revealed McDonald's active arrest warrant. The State does not show that it could not have used the same inquiry that was used in the background check to locate McDonald.

Although the facts show no bad faith by the State, they do show a lack of reasonable diligence, or negligence. This weighs against the State. When considering constitutional speedy trial claims, courts are required to determine "whether the

14

government or the criminal defendant is more to blame for [the] delay." *Doggett*, 505 U.S. at 651; see also *State v. Sanders*, 209 Kan. 231, 234, 495 P.2d 1023 (1972) (prosecution, not the accused, must ensure speedy trial right is not violated). We assign error to the State based on law enforcement's failure to diligently pursue McDonald. See *Doggett*, 505 U.S. at 657 (even where actions are not deliberate, State's negligence "still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun"); *Ellison*, 305 Kan. at 542 ("There is no evidence of any improper motive lurking behind the State's role in the delay, but the State had an obligation to bring Ellison's case to trial. It cannot fulfill that obligation by remaining passive year after year.").

### *Third Factor: Assertion of Right*

The parties agree that McDonald timely and appropriately asserted his right to a speedy trial. He moved to dismiss about five months after he was arrested, and no evidence shows McDonald knew the State had filed its complaint before his arrest. See *Doggett*, 505 U.S. at 653-54 (finding a defendant who lacks knowledge of the pending charges cannot be penalized for failing to assert the speedy trial right). This factor weighs in McDonald's favor.

### *Fourth Factor: Prejudice to Defendant*

When assessing prejudice for a constitutional speedy trial analysis, we consider both actual prejudice and, in a proper case, presumed prejudice flowing from excessive delay. We use the following approach which reflects *Barker* and *Doggett*'s teaching:

> "[A] defendant can establish prejudice in two ways. [*Battis*,] 589 F.3d at 682. First, he
> can make a specific showing that . . . he was subject to '"oppressive pretrial
> incarceration," that he suffered "anxiety and concern" about the impending trial, or that

15

his defense was impaired as a result of the delay.' *Id.* (quoting *Barker*, 407 U.S. at 532). Second, a defendant can claim prejudice without providing '"affirmative proof of particularized prejudice"' based on '"excessive delay [which] presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."' *Id.* (quoting *Doggett*, 505 U.S. at 655-56)." *United States v. Green*, 471 F. Supp. 3d 577, 600 (M.D. Pa. 2020).

We thus consider both actual prejudice and presumptive prejudice to McDonald.

*Actual Prejudice to the Defendant*

It is defendant's burden to establish actual prejudice. See *Loud Hawk,* 474 U.S. at 315-16. Courts consider three factors when evaluating actual prejudice: (1) "oppressive pretrial incarceration"; (2) "the defendant's anxiety and concern"; and (3) "most importantly, the impairment of his or her defense." *Rivera*, 277 Kan. at 118. The last consideration is the "most serious." *Barker*, 407 U.S. at 532.

We agree with the parties that the first two factors do not apply to McDonald. Because McDonald was free during the six years' delay, he suffered no oppressive pretrial incarceration, and because he was unaware of his charge from 2013 to 2019, he had no related anxiety or concern.

The district court properly relied on the third factor. It found the delay caused "significant harm" to McDonald's defense and would likely result in an unfair trial:

> "Although affirmative proof of actual prejudice is not necessary, this Defendant has demonstrated significant harm that would deny his right to receive a fair trial. The alleged victim in this case would have been between the ages of 3 and 4 when this incident occurred. She is now between the age of 11 and 13. The location of the alleged crime has changed. New homeowners have moved into the residences where the allegations may have occurred, making it difficult for his counsel to cross-examine

16

original accounts of the event. Initial statements given by [Father] to Officer Koch were not recorded or preserved in evidence. This leaves the Defendant without evidence essential to effective confrontation of [Father], who is likely to emerge as the central accuser. Additionally, Defendant's investigators were unable to locate material witnesses . . . (the alleged victim's aunt and mother). The time from the allegation to the time of trial is actually a span of 9 years. Over that span of time memories fade, crime scenes change, and witnesses are lost."

The State contends the delay created only the same generic type and amount of harm that any passage of time creates. The State also alleges the district court erred in finding that the location of the crime changed. Overall, the State argues the record fails to prove "actual prejudice."

We agree that McDonald fails to show actual prejudice. First, we find no support in the record for the district court's statement that the location of the alleged crime has changed. Defense investigator Perrine did testify that the people who now own the home where the crime allegedly occurred denied him access to investigate. And Palmberg never visited the home during his investigation. But McDonald fails to show how these facts affect his defense. Nor does he show that a future view of the home, if material, is not feasible.

McDonald contends that no one recorded Father's initial interview, but he fails to show how that fact prejudices McDonald as time passes. Father was the chief accuser and his statements are captured in the police report. McDonald fails to show how lack of a recording of Father's interview weighs more heavily against him because of the delay.

Missing witnesses and failed memories are the more crucial issues. During the second hearing on McDonald's motion to dismiss, Perrine testified that he could not locate the victim's mother and Grandmother, who were listed as defense witnesses. But the record fails to show what either of them planned to testify about, how the passage of

17

time has affected their testimony, or how the change would harm McDonald. The same is true for the victim's testimony, who was 3 or 4 years old when the incident occurred and is now 14 years old. Witnesses for both the prosecution and defense suffer memory lapses over time. A lengthy delay may be more likely to weaken the prosecution's case than the defense's because "it is the prosecution which carries the burden of proof." *Barker*, 407 U.S at 521. "[D]elay is a two-edged sword. It is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden." *Loud Hawk*, 474 U.S. at 315. Or the passage of time may weaken the defendant's case.

In short, McDonald does not explain how the delay impaired his defense other than alleging that something may have been forgotten. McDonald does not point to any specific instances in which memories have lapsed or show how the delay thwarts his ability to defend himself. Because of this lack of specificity, he fails to meet his burden to show actual prejudice.

### *Presumed Prejudice to the Defendant*

The Supreme Court recognized an alternative presumption of prejudice in *Doggett.* 505 U.S. at 655-66. A showing of actual prejudice is required if the government exercised reasonable diligence in pursuing the defendant. 505 U.S. at 656; *United States v. Erenas-Luna*, 560 F.3d 772, 778-79 (8th Cir. 2009). When the government has been negligent, however, prejudice can be presumed if there has been an excessive delay. *Doggett*, 505 U.S. at 656-58; *Erenas-Luna*, 560 F.3d at 778-79; Cf. *State v. Otero*, 210 Kan. 530, 535-36, 502 P.2d 763 (1972) (finding, pre-*Doggett*, a delay of more than seven years prejudiced a defendant's case even though the defendant did not present concrete evidence establishing the exact extent of harm caused).

18

To succeed on this factor, McDonald must first show that the pretrial delay in his case was of sufficient duration to be considered presumptively prejudicial as that term is meant in this fourth-factor context. See, e.g., *United States v. Battis*, 589 F.3d 673, 682-83 (3d Cir. 2009). This presumption of prejudice differs from the initial presumption necessary to trigger consideration of the *Barker* factors.

Is the delay here of over six years excessive enough to be considered presumptively prejudicial? *Doggett* answered this question affirmatively, holding that a six-year delay attributable to the government was long enough to presume that the defendant's trial would be compromised, and he would be prejudiced. 505 U.S. at 657-58. The Court in *Doggett* found that the durational requirement for relief without specific prejudice was met where the delay attributable to the government's negligence was six years, an amount that "far exceeds the [one-year] threshold needed to state a speedy trial claim." 505 U.S. at 658. The defendant was entitled to relief because the presumption of general prejudice was not "persuasively rebutted." 505 U.S. at 658.

Other courts have found similar delays warrant relief. See, e.g., *United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999) (five-and-a-half years); *United States v. Graham*, 128 F.3d 372, 376 (6th Cir. 1997) (eight years). For example, in *Battis*, 589 F.3d at 683, the Third Circuit held that "prejudice will be presumed when there is a forty-five-month delay in bringing a defendant to trial, even when it could be argued that only thirty-five months of that delay is attributable to the Government."

As the *Doggett* Court recognized, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." 505 U.S. at 655. So prejudice for speedy trial purposes "is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." 505 U.S. at 655. Although that sort of latent prejudice "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, . . . it is

19

part of the mix of relevant facts." 505 U.S. at 655-56. The longer the delay, the greater the significance of such intangible degradation of the trial process generally. See 505 U.S. at 656. McDonald has shown a delay of sufficient duration to be considered presumptively prejudicial for purposes of *Barker*'s fourth factor.

*Acquiescence or Rebuttal*

When, as here, a defendant relies on a presumption of prejudice to establish the fourth *Barker* factor and identifies a delay of sufficient duration to be considered presumptively prejudicial, "this presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government 'affirmatively prove[s] that the delay left [the defendant's] ability to defend himself unimpaired.'" *Battis*, 589 F.3d at 682 (quoting *Doggett*, 505 U.S. at 658 & n.1). Cf. *Rivera*, 277 Kan. at 119 (indicating presumption created by lengthy delays may be defeated by evidence of defendant's own acts and warning dismissal should be granted with "great caution").

Here, the record shows neither mitigating factor. Nothing shows that McDonald acquiesced in the delay, nor does the State offer affirmative proof that McDonald's ability to defend himself is unimpaired by the delay. We are thus left with the fact that six-and-a-half-years' delay is long enough to presume that McDonald's trial would be compromised, and he would be prejudiced.

*Weighing*

All four *Barker* factors weigh against the State. Yet the *Barker* factors are nonexclusive, 407 U.S. at 530, and our speedy trial assessment considers totality of the circumstances. One of those is the nature of the case. We do not take lightly the fact that the defendant is charged with child rape. But as the United States Supreme Court held,

20

"When the Government's negligence . . . causes delay six times as long as that generally sufficient to trigger judicial review . . . and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." *Doggett*, 505 U.S. at 658. Given that clear direction from the United States Supreme Court and having considered the totality of circumstances, we find no error in the district court's decision to dismiss this case for a violation of McDonald's constitutional right to a speedy trial.

Affirmed.