NOT DESIGNATED FOR PUBLICATION

No. 125,485

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

REYNALDO CONTRERAS-AVILA,
*Appellee*.

MEMORANDUM OPINION

Appeal from McPherson District Court; JOHN B. KLENDA, judge. Oral argument held July 9, 2024. Opinion filed August 30, 2024. Reversed and remanded.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before MALONE, P.J., HURST and COBLE, JJ.

PER CURIAM: The State of Kansas appeals after the district court granted Reynaldo Contreras-Avila's motion to dismiss due to the State's violation of his constitutional right to a speedy trial. The State dismissed its first case against Contreras-Avila on the eve of trial due to the prosecutor's concerns regarding COVID-19 and later refiled the same charges against him in a second case. Contreras-Avila moved to dismiss the second case for speedy trial reasons and the district court granted his request. Now, on appeal, the State claims the district court erred because the prosecutor's decision to dismiss the first case was necessary, and the court failed to properly apply the four

1

*Barker* factors when it decided the motion. See *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). We agree with the district court that the first dismissal was not necessary. However, we find the district court failed to apply the proper legal standard to Contreras-Avila's motion, and on our review, determine the *Barker* factors, when taken together with the unique circumstances of the COVID-19 pandemic, weigh in the favor of the State. We reverse the district court's order of dismissal and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 27, 2020, the State charged Contreras-Avila with one count of aggravated assault in violation of K.S.A. 21-5412(b)(1), a level 7 person felony. The charges stemmed from an incident at a local business on January 10, 2020, when Contreras-Avila allegedly stopped and pointed a gun at the two business owners—an incident that was recorded on the business' security system. Although the record does not explicitly provide the date of Contreras-Avila's arrest, we presume he was arrested on January 10, 2020—given that date is both the date the crime was allegedly committed, and the date Contreras-Avila was released on bond.

While on bond, Contreras-Avila was subject to bond conditions, including reporting to court services, being prohibited from consuming alcohol and/or non-prescription drugs, subjected to tests for alcohol and drugs, prohibited from traveling outside Kansas without the district court's approval, and prohibited from having any contact with the two victims of his alleged crime.

Two months after his arrest, the district court appointed a new attorney, Donald Snapp, to represent Contreras-Avila due to his prior attorney's conflict. Soon after, Contreras-Avila requested his only continuance of that case, which resulted in a two-week continuance to April 3, 2020.

2

Then, as the COVID-19 pandemic ramped up, the Kansas Supreme Court entered Kansas Supreme Court Administrative Order 2020-PR-016, effective March 18, 2020. This order continued all jury trials in Kansas that had not yet begun and suspended all statutory deadlines and time limitations for bringing a defendant to trial until further notice. As a result, Contreras-Avila was not arraigned until July 17, 2020. He pleaded not guilty and requested a jury trial.

About two months later the Kansas Supreme Court issued Kansas Supreme Court Administrative Order 2020-PR-099, effective September 4, 2020. This order made it theoretically possible to resume jury trials, as it permitted trials to commence in counties not subject to stay-at-home orders and in cases where there was a constitutional speedy trial issue.

On January 15, 2021, a third attorney entered his appearance on behalf of Contreras-Avila, after Snapp fell seriously ill with COVID. Snapp tragically succumbed to the virus, passing away that same month.

In early March 2021, with the end of the pandemic hopefully on the horizon, the district court set Contreras-Avila's case for trial. A final pretrial conference was scheduled for August 19, 2021, and the trial was set to commence on August 25, 2021.

In April 2021, Contreras-Avila was charged in a new, unrelated criminal case. As a result, the State moved to revoke his bond and the district court issued an arrest warrant. But Contreras-Avila ultimately posted an own recognizance bond for the new charges a few days later and remained out of jail pretrial. Less than a week later, the district court granted him permission to travel outside Kansas to attend his brother's graduation ceremony.

Five days before the trial was scheduled to begin, the State moved to impose COVID-19 safety precautions or, in the alternative, to continue the trial. Due to emergence of the COVID Delta variant, and the prosecutor's preexisting lung condition, the State asked that all participants in the jury trial wear face masks at all times, regardless of vaccination status. In this motion, the State acknowledged that Contreras-Avila previously indicated he would object to requiring face masks at trial as it would interfere with his constitutional right to a fair trial. Accordingly, the State alternatively requested a continuance of the trial until the public health situation permitted individuals to gather safely indoors without face masks.

Contreras-Avila objected to the State's requests. First, he argued that requiring face masks would interfere with his rights to a fair trial, due process, an impartial jury, confrontation of witnesses, and effective assistance of counsel. Second, he argued that a continuance would interfere with his rights to due process, a speedy trial, and justice administered without delay.

On August 24, 2021, the day before the jury trial was scheduled to commence, the district court held an emergency hearing on the State's motion. The district court explained the courtroom was socially distanced so all participants in the jury trial would remain more than 6 feet apart. Additionally, the courtroom had plexiglass barriers installed on all podiums and at the witness stand. The district court added that the Chief Judge of the McPherson County District Court, under the authority granted by Kansas Supreme Court Administrative Order 2021-PR-048, effective May 24, 2021, gave district court judges wide discretion over trial protocol. Using this discretion, the district court ordered all participants in the jury trial to wear face shields, regardless of vaccination status, and permitted the prosecutor to wear a face mask, except when questioning jurors or witnesses. The district court reasoned that face shields would protect the participants while preserving Contreras-Avila's rights to a fair trial and to confront witnesses. The

4

State conceded that the use of face shields would legally comply with the Kansas Supreme Court's recommendations for jury trials.

Feeling satisfied with the imposed COVID precautions, the district court refused to consider a continuance on the eve of trial. But the district judge also told the State, "[I]f you don't want to proceed with the trial, the State can always dismiss without prejudice and refile at a later date, but, you know, that's the State's decision. I don't have any control over that."

Later that day, the State filed a notice of dismissal. The district court granted the dismissal as a matter of right, dismissing the case against Contreras-Avila without prejudice.

Two months later, on October 25, 2021, the State filed a new complaint against Contreras-Avila. The only difference between the complaints in the first and second prosecutions was that the complaint in the second prosecution charged Contreras-Avila with two counts of aggravated assault, one for each of the alleged victims. On October 25, 2021, December 30, 2021, and January 5, 2022, the State asked the district court to schedule a summons date for Contreras-Avila. However, for unknown reasons, the district court did not issue a summons until January 5, 2022. This summons was not executed until January 10, 2022, and a first appearance was not held until February 15, 2022.

At a nonevidentiary preliminary hearing on April 15, 2022, Contreras-Avila indicated his intent to file a speedy trial motion. Six weeks later, Contreras-Avila moved to dismiss the case against him with prejudice due to the State's violation of his constitutional right to a speedy trial. The State responded to Contreras-Avila's motion, arguing the first case was dismissed due to necessity and Contreras-Avila neither

5

adequately asserted his right to a speedy trial nor suffered prejudice from the delays in his case.

Two months after Contreras-Avila filed his motion, the district court held a hearing. The district court found that the case against Contreras-Avila was straightforward and should have been easy for the State to prosecute. But the State instead dismissed the case on the eve of trial when it could have done so at any time after the trial date was set in March 2021. According to the district court, this dismissal was not necessary because the court had "made the proper [COVID] accommodations to protect all the parties to proceed" with the trial. The district court then noted that it would take another four to five months to hold a new trial in the second prosecution. For these reasons, the district court granted Contreras-Avila's motion and dismissed the case with prejudice.

The State timely filed its notice of appeal. However, the State missed two deadlines to file its brief and we dismissed the appeal on January 4, 2023. For reasons the State could not fully explain, the Office of the Kansas Attorney General was not properly monitoring this case. We ultimately granted the State's motion to reinstate its appeal.

THE DISTRICT COURT ERRED BY
GRANTING CONTRERAS-AVILA'S MOTION TO DISMISS

The State primarily argues the first case against Contreras-Avila was dismissed due to necessity, contrary to the district court's finding. It also contends the district court failed to properly weigh the four *Barker* factors to determine whether the right to a speedy trial had been violated. See *Barker*, 407 U.S. at 530.

Multiple legal principles apply to this appeal. First, the State preserved this issue for appeal by objecting to Contreras-Avila's motion to dismiss. And, we have jurisdiction

6

to hear this appeal under K.S.A. 22-3601. Then, whether the State has violated a defendant's right to a speedy trial is a question of law. We conduct an unlimited review over such questions and owe no deference to the district court's decision. *State v. Ford*, 316 Kan. 558, 560, 519 P.3d 456 (2022).

*The Issue is Properly Before This Court*

As a threshold issue, Contreras-Avila argues that this court erred by reinstating the State's appeal after initially dismissing it, because by dismissing the case, he suggests we now lack jurisdiction over the appeal. The existence of appellate jurisdiction is a question of law over which this court has unlimited review. *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022).

The parties do not dispute the untimeliness of the State's appellate briefing following the docketing of its appeal, so an in-depth review of that timeline is unnecessary. Basically, the State missed both its initial brief filing deadlines and an extension ordered by this court's motions panel. Then, the State did not seek to reinstate its appeal until three months after another motions panel dismissed the appeal due to the State's failure to file a brief. Broadly, the State's reasons for its dilatory conduct were a combination of high turnover in the attorney general's office—contracted with handling the appeal for McPherson County—and erroneous tracking of this particular appeal as the appellee party, instead of the appellant. This court granted the motion to reinstate.

Contreras-Avila's position on this jurisdictional issue is unpersuasive. Simply put, he should have taken his argument to the Kansas Supreme Court if he disagreed with our reinstatement of the State's appeal. See *State v. Pewenofkit*, 307 Kan. 730, 731, 415 P.3d 398 (2018) ("[A] party must challenge on petition for review a dispositive procedural holding of the Court of Appeals."). Because Contreras-Avila did not seek review of the decision, he cannot now challenge it by claiming this court lacks jurisdiction.

7

*The Constitutional Right to a Speedy Trial and Related Principles*

Finding this case is appropriately before us for decision, we now pause to emphasize that Contreras-Avila relies solely on his constitutional right to a speedy trial in this matter. Kansas law generally provides criminal defendants with an additional statutory speedy trial right but, due to the global COVID-19 pandemic, the Legislature suspended this statutory right for nearly four years. K.S.A. 22-3402(m). In fact, his claim would be meritless if he relied upon a statutory right to speedy trial, because this subsection outlines that "[n]o time between March 19, 2020, and March 1, 2024, shall be assessed against the state for any reason." K.S.A. 22-3402(m). This would encompass nearly all the time the relevant charges were pending against Contreras-Avila. Still, criminal defendants in Kansas retain a speedy trial right under both our federal and state Constitutions.

The right to a speedy trial predates the founding of the United States. It is a part of the common law and is codified in both the Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution's Bill of Rights. *State v. Queen*, 313 Kan. 12, 15-16, 482 P.3d 1117 (2021). The right "'is intended to prevent the oppression of the citizen by holding criminal prosecutions suspended over him for an indefinite time; and to prevent delays in the administration of justice, by imposing on the judicial tribunals an obligation to proceed with reasonable dispatch in the trial of criminal accusations.'" *In re Trull*, 133 Kan. 165, 169, 298 P. 775 (1931).

Unlike the Kansas statute, "the constitutional speedy trial provision does not create a strict timeframe within which the State must bring a defendant to trial. Rather, what is 'speedy' is relative to each defendant and the circumstances surrounding the case against them." *Ford*, 316 Kan. at 560 (citing *Barker*, 407 U.S. at 521-22). Instead of a specific time requirement, to determine whether a delay violates the right to a speedy trial, courts consider four nonexclusive factors: (1) the length of the delay, (2) the reason for the

8

delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. *State v. Owens*, 310 Kan. 865, 869, 451 P.3d 467 (2019) (citing *Barker*, 407 U.S. at 530). None of these four factors, standing alone, is sufficient to find a violation. Instead, the court must consider the factors together along with any other relevant circumstances. *State v. Rivera*, 277 Kan. 109, 113, 83 P.3d 169 (2004).

As noted above, "'[a]s a matter of law, appellate courts have unlimited review when deciding if the State has violated a defendant's constitutional right to a speedy trial.'" *Ford*, 316 Kan. at 560. We review the district court's factual findings underlying its decision for substantial competent evidence but review de novo the legal conclusion drawn from those facts. *Owens*, 310 Kan. at 868. "Whether a lower court properly applied the *Barker* factors is a question of law subject to unlimited review." *In re Care & Treatment of Ellison*, 305 Kan. 519, 533, 385 P.3d 15 (2016).

*Adequacy of the District Court's Findings*

First, the State argues that the district court erred in failing to fully discuss the four *Barker* factors when it dismissed the case. The State points to *State v. Moncla*, 269 Kan. 61, 65, 4 P.3d 618 (2000), where the Kansas Supreme Court found the district court's approach impeded appellate review because it did not state its findings or conclusions of law. The Supreme Court stated that "the district court must tell us what its findings are and why it concluded the motion to be without merit if we are to conduct any sort of meaningful appellate review." 269 Kan. at 65.

But here we find the analogy to *Moncla* unpersuasive. In *Moncla*, the Kansas Supreme Court was reviewing the district court's denial of a postconviction motion for a new trial based on newly discovered evidence. The appellate standard of review for such a case is abuse of discretion. 269 Kan. at 63. Under this standard of review, it is

impossible to examine whether a district court abused its discretion when there are no findings in the record. 269 Kan. at 65.

Conversely, the standard of review here is unlimited and we owe no deference to the district court's decision. And in this case, the district court record contains all the facts necessary to decide this appeal. Accordingly, any deficiencies in the district court's findings are not a barrier to our review.

At the outset, we must note that the district court entirely failed to address the *Barker* factors in either its oral ruling or its journal entry of dismissal. But rather than find error alone on this omission, given our duty to examine Contreras-Avila's claim anew, we continue to review the remainder of the district court's decision.

In examining the district court's finding that Contreras-Avila's constitutional speedy trial right was violated, we look at the totality of the circumstances, with an emphasis on the four stated *Barker* factors: (1) length of the delay, (2) reason for the delay, (3) defendant's assertion of the right, and (4) prejudice to the defendant. *Owens*, 310 Kan. at 869; *State v. McDonald*, 62 Kan. App. 2d 59, 64, 506 P.3d 930 (2022). We analyze each in turn.

1. *Length of the Delay*

The first factor we must consider is the length of the delay. "'"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."' [Citations omitted.]" *State v. Rivera*, 277 Kan. 109, 113, 83 P.3d 169 (2004).

The Kansas Supreme Court has declined to set rigid rules for determining when a delay is long enough to be presumptively prejudicial. Rather, Kansas courts analyze the delay in each case according to its particular circumstances. "Accordingly, the 'tolerable delay for an ordinary crime is less than for a complex one.'" *State v. Gill*, 48 Kan. App. 2d 102, 108-09, 283 P.3d 236 (2012) (quoting *State v. Weaver*, 276 Kan. 504, 511, 78 P.3d 397 [2003]). Kansas courts have previously found delays ranging from 450 to 578 days to be presumptively prejudicial in uncomplicated cases. See *Owens*, 310 Kan. at 875 (19-month delay in simple and straightforward aggravated robbery case was presumptively prejudicial); *Weaver*, 276 Kan. at 510-11 (15-month delay in simple and straightforward case of possession of cocaine was presumptively prejudicial); *State v. Henderson*, No. 120,213, 2020 WL 1658859, at *10 (Kan. App. 2020) (unpublished opinion) (17-month delay in ordinary prosecution for electronic solicitation of a child was presumptively prejudicial).

"'The constitutional protection of a speedy trial attaches when one becomes accused and the criminal prosecution begins, usually by either an indictment, an information, or an arrest, whichever first occurs.'" *Rivera*, 277 Kan. at 112 (quoting *State v. Taylor*, 3 Kan. App. 2d 316, 321, 594 P.2d 262 [1979]). Although the parties' briefs disagree on the date of Contreras-Avila's arrest, as discussed above, the record indicates Contreras-Avila was arrested on January 10, 2020, and the first case against him was dismissed on August 24, 2021. So, the total duration between Contreras-Avila's arrest and the first dismissal was 592 days.

The State filed a new complaint against Contreras-Avila on October 25, 2021—62 days after dismissing the case against him. The only difference between the complaints in the first and second prosecutions is that the complaint in the second prosecution alleged two counts of aggravated assault, one for each alleged victim. The second prosecution was eventually dismissed by the district court on August 2, 2022. In sum, the second prosecution lasted 281 days.

But simply calculating the number of elapsed days is not enough to examine this factor. The parties disagree over whether we are to consider the full 935 days between Contreras-Avila's initial arrest and the dismissal of the second case. Under Kansas law, the speedy trial clock starts anew on a second prosecution when the State dismisses a first case due to necessity or when the charge in the second case is not identical to the charge in the first case. *Gill*, 48 Kan. App. 2d at 113-14. But if the charge in the first case was not dismissed because of necessity and the charge in the second case is identical, then the dismissal of the first case merely tolls the speedy trial clock. So, the period before dismissal and the period after the charge was reinstated will together constitute the applicable length of delay. 48 Kan. App. 2d at 113-14 (citing *United States v. MacDonald*, 456 U.S. 1, 8, 102 S. Ct. 1497, 71 L. Ed. 2d 696 [1982]).

Neither party contests that the charges in the second case were, for purposes of speedy trial analysis, essentially identical to the first. But the parties dispute whether the district court erred by finding the first case was not dismissed out of necessity, so we must examine necessity.

The district court concluded the first dismissal was unnecessary because the State opted to dismiss the case despite the court having largely accommodated the prosecutor's concerns about COVID. The State disagrees, arguing the prevalence of COVID at the time made dismissal of the first case necessary. However, the State does not contest that the prosecutor conceded at the continuance hearing that the district court's COVID precautions legally complied with state and local court recommendations, although the prosecutor continued to voice his personal concerns. Nor did the State address, either at the time of the hearing or on appeal, the McPherson County Attorney Office's failure to provide a substitute prosecutor who would have been willing to bring the case to trial as originally scheduled.

12

In this constitutional speedy trial claim, we apply the same necessity test to calculate the length of the delay as in a statutory speedy trial claim. See *Gill*, 48 Kan. App. 2d at 113. One example of a necessary dismissal in Kansas under the statutory right to a speedy trial includes dismissing a case where a Court of Appeals decision released while the case was pending made it clear that the complaint filed against the defendant was defective and did not grant the district court jurisdiction. *State v. Jamison*, 248 Kan. 302, 305-06, 806 P.2d 972 (1991). And, when the absence of a witness would impede the prosecution, dismissal by the State has been found necessary. See *State v. Ransom*, 234 Kan. 322, 327, 673 P.2d 1101 (1983); *State v. Couch*, No. 123,196, 2021 WL 4032887, at *4-5 (Kan. App. 2021) (unpublished opinion). In contrast, an example of an unnecessary dismissal is when a witness, who the State did not demonstrate to be necessary, is unavailable. *State v. Anunda*, No. 110,629, 2015 WL 967548, at *8 (Kan. App. 2015) (unpublished opinion).

Ultimately, the district court did not err in finding the first case against Contreras-Avila was not dismissed due to necessity. Unlike *Jamison*, *Ransom*, or *Couch*, nothing suggests the State's case was subject to undecided law or lacked crucial evidence. Additionally, these legal and witness issues lie outside of a prosecutor's control, whereas the dismissal in this case was within the prosecutor's control. Despite the district court's finding that a trial could be safely held under the ordered precautions, the prosecutor dismissed the case due to his personal health concerns. We do not discount the unprecedented circumstances surrounding the COVID-19 pandemic, and while this decision is understandable, it does not rise to the level of legal necessity. Further, the county attorney's office has a responsibility to have prosecutors ready for trial, and another prosecutor should be available to substitute in the event of health or other emergency issues. The adequate staffing of the prosecutor's office is entirely within the State's control and is not analogous to uncontrollable issues such as missing witnesses or changing caselaw.

As noted, the time between the dismissal of the first case and the filing of the second case is generally not considered as part of the delay—that is, unless the State dismisses a case and then refiles it in a bad faith attempt to evade enforcement of the defendant's constitutional right to a speedy trial. *Gill*, 48 Kan. App. 2d at 110-11.

Here, we do not find the State's actions were motivated by bad faith. There is no reason to doubt the prosecutor had legitimate concerns regarding his health, especially given his preexisting lung condition. Furthermore, nothing in the record suggests a purposeful attempt to evade enforcement of the Speedy Trial Clause by the State.

In sum, the State's dismissal of the first case was not legally necessary but was also not in bad faith. For these reasons, the length of the delay in both the first and second cases are added together, but the time between the dismissal of the first case and filing of the second case is not considered. As a result, the relevant length of the delay in this case was 873 days—nearly 29 months or 2.4 years. Because this is a straightforward case involving a single event of aggravated assault, witnessed by two victims and caught on video, this length of delay is presumptively prejudicial and weighs heavily in Contreras-Avila's favor. Finding the length of delay prejudicial, we continue our analysis.

2. *Reason for the Delay*

Our next consideration is the reason for the delay. In *Barker*, 407 U.S. at 531, the Supreme Court specified that "different weights should be assigned to different reasons" for the delay in bringing a defendant to trial:

> "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the

14

government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."

The State's case against Contreras-Avila was delayed for several reasons, which we examine individually. Some of the delay is attributable to a valid reason—the response of State and local governments to COVID-19—which justifies some delay.

Due to the pandemic, our Supreme Court issued Order 2020-PR-016, which continued all jury trials scheduled to begin on or after March 18, 2020. According to the State, that order remained in effect until April 15, 2021, when deadlines and time limitations for the statutory right to a speedy trial resumed through Kansas Supreme Court Administrative Order 2021-PR-020, effective March 30, 2021. But as Contreras-Avila correctly points out, on September 4, 2020, our Supreme Court issued Order 2020-PR-099, which first allowed jury trials to be conducted in counties without stay-at-home orders or in cases where the constitutional right to a speedy trial required a jury trial. From March 18, 2020, until September 4, 2020—a total of 170 days—it was impossible to hold a jury trial in Contreras-Avila's case.

This 170-day period cannot weigh against the State, because it arose purely from state and local governments' response to the COVID-19 pandemic, which was completely outside the State's control. See *State v. Paige*, 977 N.W.2d 829, 840 (Minn. 2022) (trial delays caused by statewide orders in response to COVID-19 pandemic do not weigh against the State); *United States v. Olsen*, 21 F.4th 1036, 1047 (9th Cir. 2022) (holding that the COVID-19 pandemic "falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health" without violating a defendant's right to a speedy trial), *cert. denied* 142 S. Ct. 2716 (2022).

However, this still leaves 703 days of delay, and not all the delays in this case were valid. The entirety of the second prosecution—a 281-day period between October

25, 2021, and August 2, 2022—was attributable to the prosecutor's decision to dismiss the first case on the eve of trial. As discussed above, there is no evidence in the record of this being a bad faith attempt to delay the case, but the ultimate responsibility still rests with the State.

But the remaining 422 days are not attributable to the State. This includes the 68 days between Contreras-Avila's arrest and the statewide orders prohibiting jury trials and the 354 days between resumption of jury trials and the State's dismissal of the first case against Contreras-Avila. These delays were agreed to by the parties and the district court. Even if the total time to the first trial setting may have been longer than normal, a review of the record shows no dilatoriness on the part of any party but appears to merely reflect the inefficiencies caused by the sudden shift to remote work caused by the COVID-19 pandemic.

Ultimately, less than one-third of the delay (281 out of 873 days) is attributable to the State. Although the 281-day delay is attributable to the prosecutor's health concerns, we still consider this a choice made by the State, albeit weighed less heavily against it. But because the rest of the delay in this case is not attributable to the State, this factor is neutral to our analysis.

3. *Contreras-Avila's Assertion of His Right*

Our third consideration is Contreras-Avila's assertion of his right to a speedy trial. Contreras-Avila first argued his constitutional right to a speedy trial in his response to the State's motion to continue his first trial in August 2021. He then moved to dismiss the second case on June 2, 2022—within 10 days of the preliminary hearing being rescheduled. In *Gill*, this court found that the defendant moving to dismiss and alleging a speedy trial violation caused this factor to favor the defendant. 48 Kan. App. 2d at 115. But, in *Rivera*, the Kansas Supreme Court considered the timing of the defendant's

16

motion when weighing this factor. Stated simply, a late motion to dismiss asserting the right caused this factor to not weigh as heavily in the defendant's favor. 277 Kan. at 117-18; see also *Couch*, 2021 WL 4032887, at *10 (defendant moving to dismiss 12 days before trial was a late assertion of his right to a speedy trial and did not weigh significantly in his favor).

Here, Contreras-Avila did not file a late motion. He had no reason to assert his right until it appeared his impending trial setting may be continued within days before the trial, and immediately asserted the right at that time. He then formally re-asserted his right in his motion to dismiss the second case. Unlike the situation in *Rivera*, this is not a late motion to dismiss. This factor weighs in Contreras-Avila's favor.

### 4. *Prejudice to Contreras-Avila*

The fourth *Barker* factor is to consider the prejudice Contreras-Avila faced from the delay in his prosecution. When determining the prejudice to the defendant, it should be assessed in light of the interests that the speedy trial right was designed to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. 407 U.S. at 532.

> "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." 407 U.S. at 532.

Based on the record, we do not find that Contreras-Avila suffered any significant pretrial incarceration. Instead, he was released on bond for the entire pretrial period. Contreras-Avila argues the State sought, and the district court granted, more onerous bond conditions than usual, including a no-contact order with the alleged victims and

17

bond supervision with court services. The conditions of Contreras-Avila's bond also required him to receive permission to travel to his brother's out-of-state graduation, although the district court granted him permission to do so. But when viewing his conditions considering the applicable statutes and compared to conditions in other areas of the state, these seem to be fairly standard bond conditions, rather than overly oppressive ones.

For example, K.S.A. 22-2816(c) requires a defendant to be "closely supervised by a court services officer" until final disposition of the charges against him, and multiple district courts have rules regarding standard bond conditions that include no-contact orders and travel restrictions. See, e.g., Rule 21, Standard Conditions of Appearance Bonds (Kan. 22nd Jud. Dist. Ct. R. at 10) (requiring, in part, as the "minimum conditions of all bonds," that a defendant abide by the law, have no contact with victims or witnesses, and not leave the state without permission of the court services office); Rule 219(e), Pretrial Release in Criminal Cases Prior to Court Appearance (Kan. 23rd Jud. Dist. Ct. R. at 27) (requiring, in pertinent part, that a defendant be law-abiding, have no contact with any victim or codefendant, and that he or she cannot leave the state for more than three days without notifying the county attorney's office). Contreras-Avila's pretrial experience was not "oppressive" in the way that the *Barker* court was concerned about. See *Barker*, 407 U.S. at 532-34 (concerned with the detrimental impacts of job loss, disruption of family life, and lack of recreational or rehabilitation programs on the individual incarcerated while awaiting trial, in addition to some concerns of restraints on liberty, and finding Barker's 10-month pretrial incarceration and time spent on bond— despite being "under a cloud of suspicion and anxiety" for over 4 years—equated to minimal prejudice).

Although Contreras-Avila claims he suffered "great anxiety" after his arrest, he offers no evidence to support his conclusory claim, such as a doctor's or therapist's note or anything similar. In fact, his motion to dismiss before the district court did not

18

reference any anxiety on his part, but only argued possible prejudice as to the availability of witnesses. There is no reason to believe that the anxiety suffered by Contreras-Avila was in any way extraordinary for a defendant awaiting trial, and particularly for a defendant awaiting trial on more than one criminal case simultaneously.

Finally, Contreras-Avila raised general concerns about the fading memory of witnesses and specific concerns about one witness whose location may now be unascertainable. However, as the State points out, Contreras-Avila did not subpoena any witnesses before his scheduled trial, which implies this potentially missing witness is not critical to his defense. He provides no concrete information about the identity of this potentially missing witness, nor of the critical nature of his or her testimony. And the law is on Contreras-Avila's side in terms of procuring the witness' participation. See K.S.A. 22-4201 et seq.; K.S.A. 22-3214. He simply does not show how the potential for one missing witness affects his defense.

Ultimately, though, to meet his burden to show prejudice, Contreras-Avila cannot rely on generalities or the passage of time but is required to do more—he must specifically show how the delay thwarts his ability to defend himself. See *McDonald*, 62 Kan. App. 2d at 72. Contreras-Avila has not met this burden to show prejudice, so this factor weighs in the State's favor.

5. *Other Relevant Circumstances*

In sum, we find the length of delay presumptively prejudicial to Contreras-Avila, but the reasons for delay were essentially neutral. His timely assertion of his right to a speedy trial was also in his favor, but his failure to show prejudice weighs heavily in the State's favor. Consideration of the *Barker* factors alone results in what amounts to a tie.

But we are not required to end our analysis here. Our Supreme Court in *Ford* directed us to not only consider the conduct of both the prosecution and the accused and the *Barker* factors, but to assess them "together along with 'any other relevant circumstances.'" *Ford*, 316 Kan. at 561 (quoting *Owens*, 310 Kan. at 869). We could not, in good conscience, ignore the unprecedented circumstances surrounding these proceedings—that is, the COVID-19 pandemic. Not only did the prosecutor suffer from an underlying lung condition, putting him at higher risk for serious illness if he contracted the virus, but Contreras-Avila's own defense attorney not only fell ill, but succumbed to the virus during the pendency of the first case. These are catastrophic conditions unlikely to be repeated during our lifetimes.

*Conclusion*

Ultimately, we find the district court erred by dismissing this case with prejudice. The COVID-19 pandemic and its concomitant difficulties tips the scale in this close case.

Reversed and remanded.